[No. 28292-5-II. Division Two. February 7, 2003.]

WILMA BURNHAM, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*Lisa E. Brodoff* (of *Seattle University Peterson Law Clinic*), for appellant.

*Christine O. Gregoire, Attorney General*, and *William T. Stephens* and *Adrienne E. Smith, Assistants*, for respondent.

BRIDGEWATER, J. — Wilma Burnham applied for Medicaid coverage of costs associated with her service animal. The Department of Social and Health Services (DSHS) denied coverage because Burnham's service animal is not "durable medical equipment" or a "prosthetic device." The superior court affirmed DSHS' final order. We affirm, holding that other relevant sections of the Washington Administrative Code describing durable medical equipment support DSHS' determination that service animals are not equipment, and the animal does not qualify as a prosthetic device because it

does not remedy a deficient body part. Additionally, other statutes and WAC regulations define "service animals" and do not classify them as equipment or prosthetic devices.

Wilma Burnham is 27 years old and suffers several mental disorders including generalized anxiety disorder, agoraphobia, and posttraumatic stress disorder. Burnham's symptoms include social isolation, extreme discomfort in public settings, excessive worry and fear, restlessness, difficulty concentrating, and panic attacks. Burnham has received therapy at Vashon Youth and Family Services since 1999. Burnham is a DSHS client, and she receives public assistance in the form of Social Security Disability, Supplemental Security Income, food stamps, and Medicaid.

In 1998, Burnham was united with her service animal Shelby. Shelby is a german shepherd-golden retriever mix dog that is trained to respond to outward symptoms of a panic attack. The service animal provides the focus and companionship necessary for Burnham to feel secure and to function in public. Upon the service animal's arrival, Burnham noted a lessening of her anxiety.

As with any domesticated animal, Burnham's service animal incurs various costs and expenses. At the time of DSHS' initial decision, the service animal was under veterinary care "for an undetermined malady." Administrative Record (AR) at 63. In addition to vet bills for this malady, the service animal incurs other care, training, health, and grooming costs. DSHS pays $33.66 monthly for the service animal's food, which lessens the burden somewhat. But, since June 1999, Burnham has incurred approximately $2,300 in costs above and beyond the monthly food payment. Burnham could not afford to pay these costs on her public assistance income, so a friend loaned her the required amount.

In June 2000, Burnham applied for assistance to cover the costs that she had incurred for her service animal. DSHS denied the application, treating Burnham's request as an application for additional emergency assistance.

Burnham appealed DSHS' denial to the Office of Administrative Hearings. At the subsequent hearing, the administrative law judge denied Burnham's requested assistance, ruling that Burnham's service animal is not durable medical equipment (DME) or a prosthetic device under WAC 388-543-1000. The DSHS Board of Appeals and Thurston County Superior Court both affirmed.

## Analysis

■■ The Administrative Procedure Act, chapter 34.05 RCW, governs review of agency decisions. "We apply the standards of RCW 34.05 directly to the record before the agency, sitting in the same position as the superior court." *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998). We review agency orders in adjudicative proceedings for an erroneous interpretation or application of the law. RCW 34.05.570(3). "On issues of law, we apply the error of law standard of review, permitting us to substitute our judgment for that of the administrative body; however, we accord substantial weight to the agency's view of the law it administers." *Valentine v. Dep't of Licensing*, 77 Wn. App. 838, 844, 894 P.2d 1352, *review denied*, 127 Wn.2d 1020 (1995).

While the parties agree that de novo review applies, they dispute whether DSHS' interpretation should be given weight. As it represents, DSHS administers the state Medicaid program. RCW 74.09.500. Part of DSHS' duty in administering Medicaid is to determine whether a particular item is DME or a prosthetic device under WAC 388-543--1000. As DSHS administers the specific provision at issue, and because the terms are technical Medicaid terms, DSHS' interpretation should be given weight. But we analyze the issues first without giving weight to DSHS' interpretation.

The principal issue raised by Burnham's single assignment of error asks whether a medically necessary service animal is DME or a prosthetic device. Burnham argues that

her service animal is both DME and a prosthetic device. Therefore, Burnham argues, the animal's care costs (veterinary and grooming) are compensable labor and repair costs under WAC 388-543-1100(1). DSHS claims that the service animal is neither DME nor a prosthetic device, and therefore DSHS' denial was appropriate.

DSHS covers "DME . . . prosthetics . . . repairs and labor charges" when "[m]edically necessary." WAC 388-543--1100(1). DSHS found that Burnham's service dog is "medically necessary." AR at 67. DSHS does not challenge that finding. Therefore, the issue left for review is whether a service animal is DME or a prosthetic device.

## I. Durable Medical Equipment

" 'Durable medical equipment (DME)' means equipment that: (1) Can withstand repeated use; (2) Is primarily and customarily used to serve a medical purpose; (3) Generally is not useful to a person in the absence of illness or injury; and (4) Is appropriate for use in the client's place of residence." WAC 388-543-1000. DSHS disputes whether service dogs can be "equipment" and whether they satisfy definitional elements (1)-(3).

That the subject item be equipment is the threshold inquiry. The WAC does not define "equipment." Our obligation is thus to determine whether service animals are includable as "equipment." We turn to other sections of the WAC and to relevant statutes to see if "equipment" includes service animals:

A. WAC 388-543-1150:[1] This regulation, in part, sets forth an extensive list of medical assistance items that do not require prior authorization for Medicaid coverage. The list includes items expressly considered DME or prosthetics. Service animals and maintenance expenses associated with their care are not included items. And, no listed item

---

[1] Although WAC 388-543-1150 was adopted after the order denying coverage, it is relevant to our discussion because it illuminates the kinds of items considered DME or prosthetics.

*is akin in its physical composition to service animals.* Subsection (11), which sets forth covered prosthetics and orthotics, is illustrative. It includes:

(a) Thoracic-hip-knee-ankle orthosis (THKAO) standing frame—one every five years.

(b) Preparatory, above knee "PTB" type socket, nonalignable system, pylon, no cover, SACH foot plaster socket, molded to model—one per lifetime, per limb.

(c) Preparatory, below knee "PTB" type socket, nonalignable system, pylon, no cover, SACH foot thermoplastic or equal, direct formed—one per lifetime, per limb.

(d) Socket replacement, below the knee, molded to patient model—one per twelve-month period.

(e) Socket replacement, above the knee/knee disarticulation, including attachment plate, molded to patient model—one per twelve-month period.

WAC 388-543-1150(11).

The dominant characteristic common to all the listed items is that they are manufactured devices rather than animate life forms or expenses related to that life form's maintenance and care. Thus, service animals would not be "equipment" under the list of DME and prosthetics set forth at WAC 388-543-1150.

B. <u>WAC 388-473-0040</u>:[2] This regulation authorizes dog food benefits where a service animal assists in the recipient's daily living. WAC 388-473-0040(1) specifically defines the phrase "service animal" as "one that has been trained at a recognized school or training facility to provide [the recipient] with assistance that is necessary for [the recipient's] health and safety, and that supports [the recipient's] ability to continue to live independently." The definition's substance sheds little light on the DME inquiry. Yet, that the drafters of WAC 388-473-0040 specifically defined "service animal" shows that the concept of reimbursing service animal expenses is not a novel one, but was *in fact within*

---

[2] WAC 388-473-0040 was also adopted after the order denying coverage. It too merely aids our interpretation of the governing regulations.

the drafters' contemplation. As "service animal," or anything akin in physical composition, is absent from the provisions governing DME yet obviously a known concept, WAC 388-473-0040 militates against a ruling in Burnham's favor.

C. <u>WAC 162-26-040, RCW 49.60.040, and RCW 9.91.170</u>: WAC 162-26-040(2) also defines "service animal": "an animal that is trained for the purpose of assisting or accommodating a person's sensory, mental, or physical disability." RCW 49.60.040,[3] Washington's Law Against Discrimination, and RCW 9.91.170, which criminalizes interference with working service animals, set forth identical definitions. RCW 49.60.040(23) and 9.91.170(7)(b). These definitions do not characterize service animals as "equipment" either explicitly or implicitly.

Read in combination, the noted statutes and regulations convince us of the following:

a. No relevant definition of "service animal" characterizes the animals as equipment either explicitly or implicitly;

b. When listing items that are included or excluded, the WAC regulations pertaining to DME make no reference to life forms, i.e., a service animal;

c. The drafters of the governing WAC regulations knew of the service animal concept and could have specifically included "service animal reimbursement" or *something* akin thereto had they intended that DME include service animal expenses.

■ Thus, we hold that DME under WAC 388-543-1000 does not include service animals. We have undertaken our analysis without the deference admittedly due to DSHS' construction only to show the strength of DSHS' position. Our conclusion can only be strengthened by the deference that is owed. As service animals are not equipment, we need not analyze the remaining DME elements.

---

[3] Chapter 49.60 RCW creates a civil cause of action for negligently or maliciously injuring a service animal. RCW 49.60.370.

## II. Prosthetic Device

" 'Prosthetic device[s]' " are "replacement, corrective, or supportive device[s] prescribed by a physician or other licensed practitioner of the healing arts, within the scope of his or her practice as defined by state law, to: . . . Prevent or correct physical deformity or malfunction . . . ." WAC 388--543-1000. Burnham argues that her service animal corrects a "malfunction" and is thus a prosthetic device. DSHS contends that, to be a prosthetic, the device must correct a *physical* deformity or malfunction. Because Burnham suffers a mental malfunction, DSHS argues, the service animal cannot be a prosthetic device. The parties dispute only whether the device must correct a *physical* malfunction. On this issue, Burnham argues that "the term 'physical' modifies only deformity, not malfunction." Appellant's Reply Br. at 8.

 "A statute is ambiguous if it can reasonably be interpreted in two or more ways . . . ." *State v. Keller,* 143 Wn.2d 267, 276, 19 P.3d 1030 (2001), *cert. denied,* 534 U.S. 1130 (2002). Principles of statutory construction apply when construing an ambiguous administrative regulation. *Dep't of Licensing v. Cannon,* 147 Wn.2d 41, 57, 50 P.3d 627 (2002). " 'When a statute is ambiguous, the construction placed upon it by the officer or department charged with its administration, while not binding on the courts, is entitled to considerable weight in determining the intention of the legislature.' " *Weyerhaeuser Co. v. Dep't of Ecology,* 86 Wn.2d 310, 315, 545 P.2d 5 (1976) (quoting *State ex rel. Pirak v. Schoettler,* 45 Wn.2d 367, 371, 274 P.2d 852 (1954)).

WAC 388-543-1000 is ambiguous because it can reasonably be interpreted to require a physical malfunction or any malfunction, physical or not. Therefore, we employ principles of statutory construction, including the normal rules of grammar,[4] to decide whether "physical" modifies "malfunction."

---

[4] *See Estate of Telfer v. Bd. of County Comm'rs,* 71 Wn. App. 833, 836, 862 P.2d 637 (1993) (applying principles of statutory construction and "normal rules of grammar" to interpret a statute), *review denied,* 123 Wn.2d 1028 (1994).

But contrary to Burnham's suggestion, we decline to apply the last antecedent rule here even though it is a common rule of grammar. "The last antecedent is the last word, phrase or clause that can be made an antecedent without impairing the meaning of the sentence." *In re Estate of Kurtzman*, 65 Wn.2d 260, 264, 396 P.2d 786 (1964). "Deformity" and "malfunction" come *after* "physical" and thus are not antecedents.

■ When interpreting a statute, we read each statutory provision in relation to the other provisions and construe the statute as a whole. *Weyerhaeuser Co. v. Tri*, 117 Wn.2d 128, 133, 814 P.2d 629 (1991). Read alongside the other subsections under prosthetic device, "physical," must modify both "deformity" and "malfunction." " '**Prosthetic device**' . . . means a replacement, corrective, or supportive device . . . to: (1) Artificially replace a missing portion of the body; (2) Prevent or correct physical deformity or malfunction; or (3) Support a weak or deformed portion of the body." WAC 388-543-1000. Subsections (1) and (3) clearly contemplate some sort of remedy designed to cure a missing or otherwise deficient body part. Therefore, those subsections address physical, not mental problems.

Also, in its definition of "artificial limb," WAC 388-543--1000 refers readers to the definition of "prosthetic device." This specific reference signifies a direct relationship between the two phrases, which can only be a physical one since "artificial limb" unquestionably means a physical device.

In light of the WAC provision's larger context, "physical" modifies both "deformity" and "malfunction." Thus, Burnham's service animal cannot be a prosthetic device unless Burnham suffers from a physical malfunction. Burnham does not contend that her malfunction is physical.

Two other factors convince us that service animals are not prosthetic devices. First, the list of prosthetic devices set forth at WAC 388-543-1150 is replete with manufactured items. In light of the nature and physical composition

of the examples given, classifying service animals as prosthetic devices is simply unreasonable. Second, none of the statutes or WACs that define "service animal" (RCW 49.60.040(23) and 9.91.170(7)(b), and WAC 388-473-0040(1) and 162-26-040(2)) characterizes them as prosthetics either explicitly or implicitly.[5]

For the foregoing reasons, and in light of the deference due to DSHS' construction, a service animal is not a prosthetic device under WAC 388-543-1000.

Burham requests attorney fees under RCW 74.08.080 and 4.84.350. As she has not prevailed in this appeal, her request is denied.

Affirmed.

HOUGHTON and ARMSTRONG, JJ., concur.

Review denied at 150 Wn.2d 1013 (2003).

---

[5] We do not comment upon the advisability of including these costs as covered items. That is a decision for the legislature or the department.