165 P.3d 399 (2007)
Keith UTTER, Respondent,
v.
STATE of Washington, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Appellant.
No. 35399-7-II.
Court of Appeals of Washington, Division 2.
August 21, 2007.
*401 Todd Harris Carlisle, Northwest Justice Project, Tacoma, WA, for Respondent.
Carrie L. Bashaw, John D. Clark, Office of the Attorney General, Olympia, WA, for Appellant.
BRIDGEWATER, J.
¶ 1 The Department of Social and Health Services (the Department) appeals from a superior court ruling that invalidated the Department's claim for reimbursement from Keith Utter for costs relating to his competency evaluation and treatment pending criminal charges. We hold that: RCW 10.01.160 is the appropriate statute under which the Department may obtain reimbursement from criminal defendants; the Department's costs for competency evaluation and treatment are costs "specially incurred" by the State in prosecuting defendants; and the Department can obtain recovery of these costs only after a defendant's conviction. Because recovery of these costs is specifically provided by this statute, the State may not rely on other statutes, i.e., RCW 10.77.250 and RCW 43.20B.330, to recover these costs.
¶ 2 Here, the trial court found Utter to be incompetent to stand trial, the State dismissed its information, and Utter was not convicted. Nevertheless, the administrative law judge (ALJ) granted the Department's claim for reimbursement. But we now hold, consistent with the superior court, that the Department is not entitled to reimbursement from Utter for costs relating to his competency evaluation and treatment. Thus, we reverse the ALJ's decision, remanding to the agency to set aside the ALJ's final order.

FACTS
¶ 3 The State charged Utter with one count of felony harassment and one count of fourth degree assault. Thereafter, the trial court ordered Utter to undergo a psychiatric evaluation at the Clark County jail to determine whether he was competent to stand trial.
¶ 4 After reviewing the evaluation, the trial court determined that there was reason to doubt Utter's competency to stand trial. Under RCW 10.77.090(1)(b), the trial court ordered Utter to be committed to Western State Hospital (WSH) for up to 90 days. And because there was reason to doubt Utter's competency to understand the nature of the proceedings against him and assist in his own defense, the trial court's order committed Utter to "undergo evaluation and treatment to restore defendant's competency to proceed to trial." AR at 61. WSH received Utter on April 7, 2004. Before this commitment period had expired, the trial court ordered Utter to be committed to WSH for up to another 90 days.
¶ 5 During Utter's commitment at WSH, the Department sought reimbursement from him under RCW 10.77.250[1] for costs relating to his evaluation and treatment. The Department served him with a notice and finding of responsibility (NFR), in which the Department determined that Utter had the ability to contribute $5.28 per day for costs relating to his evaluation and treatment.[2]
¶ 6 Eventually, on October 20, 2004, after Utter was transferred back to the Clark County jail, the trial court found him to be incompetent to stand trial. Then, under RCW 10.77.090(4), the trial court ordered Utter to be committed to WSH for up to 180 days. At the end of this commitment period, Utter remained incompetent to stand trial. Accordingly, the State dismissed the charges against Utter. Finally, under chapter 71.05 RCW, the State civilly committed Utter.
*402 ¶ 7 Meanwhile, Utter had appealed the NFR to an ALJ. And the Department agreed to seek reimbursement only for costs relating to Utter's competency evaluation and treatment.[3] Accordingly, Utter's total financial obligation for this commitment period was $770.88.[4]
¶ 8 But Utter did not dispute the costs relating to his competency evaluation and treatment. AR at 6. Instead, he challenged the Department's authority to seek reimbursement under RCW 10.01.160[5] and under article I, section 22 of the Washington State Constitution. In conclusion, he asked that "his debt for cost of care . . . be set at zero." AR at 29.
¶ 9 Ultimately, the ALJ concluded that, under WAC XXX-XX-XXXX(1), he could not determine whether the Department's rules were invalid, unenforceable, or unconstitutional. "When a party raises an argument that a rule should be invalidated, an administrative law judge is constrained to take argument for consideration by a judicial branch judge." AR at 4. Nevertheless, finding that Utter's veteran's benefits expired May 31, 2004, the ALJ modified the total financial obligation. Accordingly, Utter's total financial obligation was $290.40.
¶ 10 Utter then filed a petition for judicial review in Thurston County Superior Court. Again, Utter did not dispute the costs relating to his competency evaluation and treatment. Instead, he challenged the Department's authority to seek reimbursement under article I, section 22 of the Washington State Constitution and under RCW 10.01.160.
¶ 11 Sitting in its appellate capacity, the superior court reversed the ALJ's decision and invalidated the NFR on both statutory and constitutional grounds. The superior court then enjoined the Department from seeking reimbursement from Utter for costs relating to his competency evaluation and treatment. The State appeals the superior court's decision.

ANALYSIS

I. Standard of Review
¶ 12 The Administrative Procedure Act, chapter 34.05 RCW, governs our review of agency decisions. Burnham v. Dep't of Social & Health Servs., 115 Wash.App. 435, 438, 63 P.3d 816, review denied, 150 Wash.2d 1013, 79 P.3d 445 (2003). "We apply the standards of RCW 34.05 directly to the record before the agency, sitting in the same position as the superior court." City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998).
¶ 13 Because this case concerns the validity of an agency order in an adjudicative proceeding, RCW 34.05.570(3) applies. City of Redmond, 136 Wash.2d at 45, 959 P.2d 1091. RCW 34.05.570(3) sets forth nine standards for granting relief from the ALJ's decision, of which the State asserts two: (1) "[t]he order, or the statute or rule on which the order is based, is in violation of constitutional provisions on its face or as applied" and (2) "[t]he agency has erroneously interpreted or applied the law." Br. of Appellant at 14 (quoting RCW 34.05.570(3)(a) and (d)).
¶ 14 Utter contends that "[his] state constitutional claim is the only clearly recognized basis under the APA in this case." Br. of Resp't at 16. As such, Utter asks us to pass on the non-constitutional issues in this case and "rule directly" on the constitutional issues in this case. Br. of Resp't at 17.
*403 ¶ 15 Although the trial court ruled directly on the constitutional issues in this case, we are not bound by the trial court's conclusions of law. Leschi Improvement Council v. Wash. State Highway Comm'n, 84 Wash.2d 271, 286, 525 P.2d 774, 804 P.2d 1 (1974). And because non-constitutional grounds ultimately dispose of this case, we do not need to "rule directly" on the constitutional issues. See Anderson v. City of Seattle, 123 Wash.2d 847, 853, 873 P.2d 489 (1994). Based on well-established policy, we decline Utter's request to do so. State v. Speaks, 119 Wash.2d 204, 207, 829 P.2d 1096 (1992).
¶ 16 Therefore, we review the ALJ's order for an erroneous interpretation or application of the law. RCW 34.05.570(3)(d). "With respect to issues of law under RCW 34.05.570(3)(d), we essentially review such questions de novo. We accord deference to an agency interpretation of the law where the agency has specialized expertise in dealing with such issues, but we are not bound by an agency's interpretation of a statute." City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091.

II. Costs Under RCW 10.77.090
¶ 17 When the trial court finds an accused person incompetent to stand trial and then commits him to the Department under RCW 10.77.090, the Department is responsible for all costs relating to his evaluation and treatment. RCW 10.77.250. But the Department may assert a right of reimbursement under RCW 10.77.250 and RCW 43.20B.330. Under RCW 43.20B.330, "[a]ny person admitted or committed to a state hospital for the mentally ill, and their estates and responsible relatives are liable for reimbursement to the state of the costs of hospitalization and/or outpatient services."
¶ 18 The Department argues that all persons admitted or committed to a state hospital have an obligation to contribute to the cost of their hospitalization. The Department relies on RCW 70.48.130, which, among other things, provides that a governing unit may obtain reimbursement from a confined person for emergency or necessary medical care not provided under chapter 74.09 RCW. The Department then contends:
RCW 10.77.250 is directly analogous to RCW 70.48.130 and accomplishes the same legislative purpose  that government agencies recover the costs of medical care provided to criminal defendants awaiting prosecution. These statutes clearly express the Legislature's intent that criminal defendants are not entitled to receive medical treatment at taxpayer expense when they have financial resources to pay for needed medical care while in custody. Moreover, there is no logical explanation for why financial responsibility for mental health treatment should be treated any differently than financial responsibility for treatment for a heart attack or any other physical illness.
Br. of Appellant at 21.
¶ 19 Furthermore, the Department argues that RCW 10.77.250 and RCW 43.20B.330 alone should control because these two statutes are more recently enacted and more specific than RCW 10.01.160, in that the Department has authority to seek reimbursement from any person admitted or committed to a state hospital for the costs of services.[6] Yet, as Utter informed the ALJ, "Financial charges assessed against a criminal defendant cannot be looked at in a vacuum. Many statutes, court rules and constitutional provisions apply." AR at 21.
¶ 20 Here, the Department misapplies the rule regarding general and specific statutes. While provisions of a more recent specific statute prevail in a conflict with a more general predecessor, this rule applies only if the statutes deal with the same subject matter and the conflict cannot be harmonized. City of Tacoma v. Taxpayers, 108 Wash.2d 679, 690, 743 P.2d 793 (1987); State v. Stark, 66 Wash.App. 423, 438, 832 P.2d 109 (1992). But by their plain language, RCW 10.01.160 and RCW 10.77.250 do not deal with the same subject matter. RCW *404 10.77.250 provides that the Department may obtain reimbursement from a mentally ill person, his estate, and responsible relatives, for all costs relating to his evaluation and treatment. See RCW 43.20B.330. In contrast, RCW 10.01.160 provides that a court may require a defendant to pay costs that are specially incurred by the State in prosecuting him. Because this appeal concerns only the costs relating to Utter's competency evaluation and treatment during the criminal procedure, and not the subsequent costs relating to Utter's civil commitment, RCW 10.77.250 does not apply here.

III. Costs Under RCW 10.01.160
¶ 21 Under RCW 10.01.160(1), a trial court has authority to impose costs on a convicted defendant. State v. Buchanan, 78 Wash.App. 648, 651, 898 P.2d 862 (1995). But these costs "shall be limited to expenses specially incurred by the state in prosecuting the defendant." RCW 10.01.160(2).[7] Moreover, these costs "cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law." RCW 10.01.160(2).
¶ 22 In addition, the statute specifically provides that:
The court shall not sentence a defendant to pay costs unless the defendant is or will be able to pay them. In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose.
RCW 10.01.160(3). Finally, if a trial court determines at some time after the sentence has been imposed that the costs will impose a manifest hardship on the defendant or his family, the court "may remit all or part of the amount due in costs, or modify the method of payment." RCW 10.01.160(4).
¶ 23 RCW 10.01.160 is based on former ORS 161.665 (1971), an Oregon statute that the United States Supreme Court upheld in Fuller v. Oregon, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974)[8]; 1976 Op. Att'y Gen. No. 14 at 2-3. In State v. Barklind, 87 Wash.2d 814, 557 P.2d 314 (1976), our Supreme Court applied Fuller, and delineated the salient features of a constitutionally permissible costs and fees structure. State v. Curry, 118 Wash.2d 911, 915, 829 P.2d 166 (1992). The requirements for a recoupment statute, e.g., RCW 10.01.160, are as follows:
(1) Repayment must not be mandatory;
(2) Repayment may be imposed only on convicted defendants;
(3) Repayment may only be ordered if the defendant is or will be able to pay;
(4) The financial resources of the defendant must be taken into account;
(5) A repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end;
(6) The convicted person must be permitted to petition the court for remission of the payment of costs or any unpaid portion;
(7) The convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court order or a failure to make a good faith effort to make repayment.
State v. Eisenman, 62 Wash.App. 640, 644 n. 10, 810 P.2d 55, 817 P.2d 867 (1991) (citing Barklind, 87 Wash.2d at 817-18, 557 P.2d 314).

IV. Prosecuting the Defendant
¶ 24 Here, the Department claims that the costs relating to Utter's competency evaluation and treatment are not expenses specially *405 incurred by the State in prosecuting him. Specifically, the Department argues that "[it] is not involved in the prosecution of criminal defendants" and that "[t]he plain language of RCW 10.01.160 therefore does not preclude the Department from recovering what is allowed by the express provisions of RCW 10.77.250 and RCW 43.20B.330." Br. of Appellant at 22, 23. We disagree.
¶ 25 While costs are limited under RCW 10.01.160(2) to "expenses specially incurred by the state in prosecuting the defendant," RCW 10.01.160 does not define the term "prosecuting." So the Department, relying on McClarty v. Totem Elec., 157 Wash.2d 214, 225, 137 P.3d 844 (2006), asks us to give "prosecuting" its plain and ordinary meaning as found in a standard dictionary. Br. of Appellant at 23.
¶ 26 The ordinary meaning of the verb "to prosecute" means "to institute legal proceedings against." Webster's Third New Int'l Dictionary 1820 (2002). The term "prosecution" means "the institution and continuance of a criminal suit involving the process of exhibiting formal charges against an offender before a legal tribunal and pursuing them to final judgment on behalf of the state or government." Webster's Third New Int'l Dictionary 1820. Similarly, in legal parlance, the term "prosecute" means "[t]o institute and pursue a criminal action against (a person)." Black's Law Dictionary 1258 (8th ed.2004). And the term "prosecution" means "[a] criminal proceeding in which an accused person is tried." Black's Law Dictionary 1258.
¶ 27 But we do not simply apply a mechanical definition. One Pac. Towers Homeowners' Ass'n v. HAL Real Estate Invs., Inc., 148 Wash.2d 319, 330, 61 P.3d 1094 (2002). Instead, we give careful consideration to the subject matter involved, the context in which the words are used, and the purpose of the statute. City of Tacoma, 108 Wash.2d at 693, 743 P.2d 793. Moreover, where our legislature has adopted a statute of another state, we consider as authoritative that state's construction of it. State v. Earls, 51 Wash.App. 192, 197, 752 P.2d 402 (1988).
¶ 28 In Oregon v. Flajole, 204 Or.App. 295, 129 P.3d 770, 772 (2006), the Oregon Court of Appeals noted that "in ordinary parlance  and in usage throughout the Oregon Revised Statutes  the term [`prosecuting'] refers to the portion of a criminal action that leads to a determination of guilt or innocence of the crime charged." The Flajole court then noted that "a number of related statutes that were contemporaneous with the original enactment of [former] ORS 161.665 also suggest that a `prosecution' is that portion of a `criminal action' leading up to the determination of guilt or innocence." Flajole, 129 P.3d at 772. Finally, the Flajole court noted that "case law likewise confirms that [former] ORS 161.665, in referring to costs incurred `in prosecuting the defendant,' means the proceedings by which the defendant was determined guilty of the crime of conviction." Flajole, 129 P.3d at 772.
¶ 29 Based in part on these definitions, the Department argues:
The Department is an independent agency, not controlled or directed by the prosecution, and not involved in any of the decisions or discretion of criminal prosecution. Naturally, the Department was not involved in the court proceedings against Mr. Utter in Clark County Superior Court.
The trial court did not commit Mr. Utter to determine his guilt or innocence, or as a punishment or penalty for his alleged criminal behavior. Rather, the trial court sought to have the Department evaluate and treat Mr. Utter's mental illness.
Br. of Appellant at 23-24 (footnote omitted).
¶ 30 Even so, the Department fails to note that every accused person in a criminal case has a fundamental right to be present at his trial. See State v. Maryott, 6 Wash.App. 96, 102, 492 P.2d 239 (1971). And this fundamental right is guaranteed by the Sixth Amendment to the United States Constitution,[9] the Fourteenth Amendment of the *406 United States Constitution, and article I, section 22 of the Washington State Constitution.[10]Maryott, 6 Wash.App. at 103, 492 P.2d 239. In particular, article I, section 22 of the Washington State Constitution declares that "[i]n criminal prosecutions the accused shall have the right to appear and defend in person."
¶ 31 "The right here declared is to appear with the use of not only his mental but his physical faculties unfettered." State v. Williams, 18 Wash. 47, 51, 50 P. 580 (1897). As early as 1907, our Supreme Court warned:
If the prisoner with his hands or feet manacled cannot have a fair trial, within the meaning of the Constitution, how can it be contended that he can have such fair trial when his mind is fettered? . . . His personal presence in court is at all times indispensable. But of what avail would his bodily presence be, if his mental faculties were gone?
State ex rel. Mackintosh v. Superior Court of King County, 45 Wash. 248, 254, 88 P. 207 (1907).
¶ 32 Before 1973, Washington courts relied exclusively on their inherent judicial powers to make determinations regarding competency. State v. Wicklund, 96 Wash.2d 798, 801, 638 P.2d 1241 (1982). Then, in 1973, the legislature created a new chapter, chapter 10.77 RCW, relating to procedures, treatment, and care of the criminally insane and those defendants who are incompetent to stand trial. Wicklund, 96 Wash.2d at 801, 638 P.2d 1241 (citing Laws of 1973, 1 st Ex.Sess., ch. 117, p. 795). In particular, the legislature provided that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050.[11]
¶ 33 When faced with the prospect of trying, convicting, or sentencing an incompetent person for the commission of an offense so long as such incapacity continues, Utter argues that the State essentially has two choices under article I, section 22 of the Washington State Constitution and under chapter 10.77 RCW: (1) assume that the defendant is incompetent and dismiss the charges against him; or (2) have the Department examine, treat, and report on the defendant's mental condition under chapter 10.77 RCW. Utter explains that the State wisely does not choose the first alternative. Instead, as Utter contends, the State has chosen "a regime of compulsory competency restoration treatment." Br. of Resp't at 20.
¶ 34 Here, the State had reason to doubt Utter's competency. But instead of assuming that he was incompetent and dismissing the charges against him, the State initially sought and obtained a court order under RCW 10.77.060 for at least one qualified expert to examine and report on Utter's mental condition. Then, on the motion of the State, the trial court granted a court order of commitment for 90 days under RCW 10.77.090. Then, on the motion of the State, *407 the trial court granted another court order for commitment for 90 days under RCW 10.77.090. Then, on the motion of the State, the trial court granted a court order for commitment for 180 days under RCW 10.77.090. Finally, after finding that Utter was incompetent, the State dismissed the charges and instituted civil commitment proceedings.
¶ 35 Clearly, the costs relating to Utter's competency evaluation and treatment are expenses incurred by the State in prosecuting him. After all, the State instituted and pursued formal legal proceedings against Utter when it filed the information. The State sought the court orders under chapter 10.77 RCW. The costs relating to Utter's evaluation and treatment occurred well after the State had filed the information. The court's orders committed Utter to "undergo evaluation and treatment to restore defendant's competency to proceed to trial." AR at 61, 63 (emphasis added). And if Utter's competency had been restored at the end of his evaluation and treatment, the State could have continued in prosecuting him. Whatever evaluation and treatment Utter received from the Department, it specifically related to the continuation of the criminal process.
¶ 36 Moreover, it should not matter how the costs relating to Utter's competency evaluation and treatment are labeled or what governmental agency pays these costs, as long as these costs can be directly traced to expenses incurred by the State in prosecuting him. See Oregon v. Heston, 74 Or.App. 631, 704 P.2d 541, 543-44 (1985). Thus, as Utter succinctly concluded in his brief before the ALJ, "To [ensure] that a defendant is competent to proceed against is simply a cost of the prosecution's case." AR at 22. We agree.

V. Expenses Specially Incurred
¶ 37 The Department broadly argues that the costs relating to Utter's competency evaluation and treatment are not expenses specially incurred by the State in prosecuting him. We disagree.
¶ 38 No Washington cases address this issue. But, because our legislature adopted RCW 10.01.160 from former ORS 161.665, we consider Oregon's construction and interpretation of former ORS 161.665 as authoritative. Earls, 51 Wash.App. at 197, 752 P.2d 402; 1976 Op. Att'y Gen. No. 14 at 2-3. The Oregon Court of Appeals has explained:
The state submits that the costs "specially incurred" in prosecuting a defendant include the costs of providing a court-appointed counsel and the payment of investigator's expenses. These are, in fact, the principal expenses which the state "specially" incurs in prosecuting an individual defendant. The statute specifically excludes a jury fee or the costs of summoning jurors.[[12]] In addition, most of the costs of the prosecution side of the case are excluded from consideration as costs. The "costs of prosecution" specifically do not include district attorneys' salaries, sheriffs' salaries, jurors' fees, police investigations, etc. . . . Although the services of any attorney and investigator are used by and for a defendant's benefit in the first instance, they are costs which the state or county must pay if an indigent defendant is to be prosecuted. They are thus costs which are assessable as part of the sentence in a proper case.
Oregon v. Fuller, 12 Or.App. 152, 504 P.2d 1393, 1396 (1973), aff'd, 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974).
¶ 39 Furthermore, in Oregon v. Armstrong, 44 Or.App. 219, 605 P.2d 736, 738 (1980), the Oregon Court of Appeals held that the cost of transporting a defendant to Oregon was an expense specially incurred by the State in prosecuting the defendant. In Oregon v. Hastings, 24 Or.App. 123, 544 P.2d 590, 590-91 (1976), the Oregon Court of Appeals *408 concluded that the State's witness fees were expenses specially incurred by the State in prosecuting a defendant. The Hastings court concluded, "Payment of witness fees in a particular case is not an expenditure made `irrespective of specific violations of law.'" Hastings, 544 P.2d at 590-91 (quoting ORS 161.665(2)).
¶ 40 But in Oregon v. Washburn, 48 Or. App. 157, 616 P.2d 554, 555 (1980), the Oregon Court of Appeals concluded that overtime pay for sheriff's deputies who testified at trial was not an expense specially incurred by the State in prosecuting a defendant. "A deputy, by testifying in court after his regular working day, is compensated as a deputy sheriff and not as a witness." Washburn, 616 P.2d at 555. And in Flajole, the Oregon Court of Appeals concluded that, among other things, the authority conferred by ORS 161.655(1) does not extend to: (1) ordinary overhead expenses of maintaining a police agency; (2) costs incurred for payment of witnesses in excess of statutory witness fee amounts; (3) costs incurred by the victim rather than the State; or (4) costs incurred in prosecuting the defendant in an unrelated case. Flajole, 129 P.3d at 771; see also RCW 10.01.160(2) (costs cannot include expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law).
¶ 41 Here, we conclude that the costs relating to Utter's competency evaluation and treatment were specially incurred by the State. Unlike costs associated with prosecutors' salaries, sheriffs' salaries, or police investigations, costs relating to evaluation and treatment under chapter 10.77 RCW are not a public expenditure made "irrespective of specific violations of law." RCW 10.01.160(2); see also Hastings, 544 P.2d at 590-91. The State incurred these costs, in this particular case, with the expectation that it could pursue the charges against Utter if he were found competent. See Hastings, 544 P.2d at 590-91. And like costs for court-appointed attorneys or investigators, costs relating to evaluation and treatment under chapter 10.77 RCW are costs that the State ultimately must pay if an indigent defendant, like Utter, is to be prosecuted. See Fuller, 504 P.2d at 1396.
¶ 42 Therefore, we hold that the costs relating to Utter's competency evaluation and treatment were specially incurred by the State in prosecuting him. As such, for the Department to recover these costs, if at all, it must have sought reimbursement under RCW 10.01.160.

VI. Expenses Inherent in Providing a Constitutionally Guaranteed Jury Trial
¶ 43 Nevertheless, RCW 10.01.160(2) includes an exception for expenses specially incurred by the State in prosecuting a defendant. This exception states that costs "cannot include expenses inherent in providing a constitutionally guaranteed jury trial." RCW 10.01.160(2). Again, no Washington cases address whether the exception in RCW 10.01.160(2) encompasses those costs intended to safeguard a defendant's constitutional right to appear and defend in person, e.g., costs under chapter 10.77 RCW. But see Oregon v. Ferman-Velasco, 333 Or. 422, 41 P.3d 404 (2002).
¶ 44 Here, the parties have not called on us to decide whether costs relating to Utter's competency evaluation and treatment, expenses specially incurred by the State in prosecuting him, are inherent in providing a constitutionally guaranteed jury trial. Thus, we do not address this issue.

VII. Convicted Defendant
¶ 45 Moreover, this issue must await another day because, even though the costs of competency evaluation and treatment are expenses specially incurred by the State in prosecuting a defendant, the trial court may impose costs "only upon a convicted defendant." RCW 10.01.160(1). "[T]hose who are acquitted, whose trials end in mistrial or dismissal, and those whose convictions are overturned upon appeal face no possibility of being required to pay." Fuller, 417 U.S. at 45, 94 S.Ct. 2116 (emphasis added). Here, at all times, Utter was an accused person. See McClintock v. Rhay, 52 Wash.2d 615, 616, 328 P.2d 369 (1958). Utter was never a convicted defendant because the State voluntarily dismissed the charges against him. See State v. Chapman, 140 Wash.2d 436, 449, *409 998 P.2d 282, cert. denied, 531 U.S. 984, 121 S.Ct. 438, 148 L.Ed.2d 444 (2000) (discussing definition of conviction). Accordingly, even though the costs of Utter's competency evaluation and treatment were expenses specially incurred by the State in prosecuting him, the Department could not have sought reimbursement under RCW 10.01.160, which is its only remedy under the facts of this case.
¶ 46 Finally, we do not address whether the Department's recovery of these expenses violates article I, section 22 of the Washington State Constitution, which provides in part that "[i]n no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed." Although Utter contends that his right to "appear and defend" under article I, section 22 of the Washington State Constitution was violated by the Department's reimbursement attempts, we do not address his argument because our statutory examination has resolved the matter. See Anderson, 123 Wash.2d at 853, 873 P.2d 489; Speaks, 119 Wash.2d at 207, 829 P.2d 1096.

VIII. Conclusion
¶ 47 In sum, our obligation to reconcile the potentially conflicting provisions of RCW 10.01.160, RCW 10.77.250, and RCW 43.20B.330 requires us to conclude that the costs relating to Utter's competency evaluation and treatment were expenses specially incurred by the State in prosecuting him. As such, for the Department to recover these costs, if at all, it must have sought reimbursement under RCW 10.01.160. But, because Utter was never a convicted defendant; the Department had no statutory authority under RCW 10.01.160 to require him to pay these costs.
¶ 48 The ALJ's decision is reversed and this matter is remanded to the agency to set aside the ALJ's final order in a manner consistent with this opinion.
We concur: HUNT, J., and VAN DEREN, A.C.J.
NOTES
[1] RCW 10.77.250 provides, "The department shall be responsible for all costs relating to the evaluation and treatment of persons committed to it pursuant to any provisions of this chapter, and the logistical and supportive services pertaining thereto. Reimbursement may be obtained by the department pursuant to RCW 43.20B.330."
[2] As the State notes, "This appeal does not concern the Department's authority to seek reimbursement from Mr. Utter for costs associated with evaluating and treating his mental illness after his commitment . . . under RCW 71.05." Br. of Appellant at 5 n. 6.
[3] "The parties agreed that the period of time at issue is from April 7, 2004, through October 31, 2004, because [Utter's] veteran's benefits decreased in November of 2004." AR at 31.
[4] The State notes that the total cost relating to Utter's evaluation and treatment for this commitment period was $85,007.31.
[5] In part, under RCW 10.01.160(1), "The court may require a defendant to pay costs. Costs may be imposed only upon a convicted defendant." In part, under RCW 10.01.160(2), "Costs shall be limited to expenses specially incurred by the state in prosecuting the defendant. . . . They cannot include expenses inherent in providing a constitutionally guaranteed jury trial or expenditures in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law."
[6] The Department claims, "At best, RCW 10.01.160 provides only a general description of the court's power to impose costs of prosecution, with no express or specific mention of the cost of hospitalization." Br. of Appellant at 27.
[7] These costs shall also be limited to expenses in administering the deferred prosecution program under chapter 10.05 RCW. RCW 10.01.160(2). The deferred prosecution program is not at issue in this appeal.
[8] "The central question was whether Fuller's right to counsel was compromised by the assessment of fees. The Court determined that recoupment in that case was constitutional because the Oregon statute contained important safeguards against imposition of fees against defendants who are indigent and will likely remain so." State v. Eisenman, 62 Wash.App. 640, 644, 810 P.2d 55, 817 P.2d 867 (1991).
[9] The Sixth Amendment to the United States Constitution provides:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.
[10] Article I, section 22 of the Washington State Constitution provides:

In criminal prosecutions the accused shall have the right to appear and defend in person, or by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is charged to have been committed and the right to appeal in all cases. . . . In no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed.
(Emphasis added.) Furthermore, "a defendant in a criminal proceeding is an accused person until formal judgment and sentence have been entered." McClintock v. Rhay, 52 Wash.2d 615, 616, 328 P.2d 369 (1958). As such, an accused person is unconditionally guaranteed the above rights, even if he is without funds. See State v. Harris, 57 Wash.2d 383, 389-90, 357 P.2d 719 (1960) (Ott, J., dissenting); McClintock, 52 Wash.2d at 616, 328 P.2d 369.
[11] The State's failure to observe procedures adequate to protect this right is a denial of due process. State v. O'Neal, 23 Wash.App. 899, 901, 600 P.2d 570, review denied, 93 Wash.2d 1002 (1979); see also Drope v. Missouri, 420 U.S. 162, 172, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975).
[12] In contrast, however, RCW 10.01.160(2) specifically provides that "jury fees under RCW 10.46.190 may be included in costs the court may require a defendant to pay." As first enacted, though, RCW 10.01.160(2) did not include this provision. See Laws of 1975-76, 2d Ex. Sess., ch. 96, § 1. Notably, in a 1978 opinion, the Washington Attorney General concluded that it was not possible to reconcile RCW 10.01.160 and RCW 10.46.190. 1978 Op. Att'y Gen. No. 4 at 7. The Washington Attorney General then concluded that RCW 10.01.160 impliedly repealed RCW 10.46.190. 1978 Op. Att'y Gen. No. 4 at 7.