244 P.3d 997 (2010)
Durrell R. SLAYTON, Respondent,
v.
DEPARTMENT OF SOCIAL & HEALTH SERVICES, Appellant.
No. 39735-8-II.
Court of Appeals of Washington, Division 2.
December 21, 2010.
Jonathon Bashford, Office of the Attorney General, Olympia, WA, for Appellant.
Todd Harris Carlisle, Northwest Justice Project, Tacoma, WA, for Respondent.
HUNT, P.J.
¶ 1 This case presents an issue of first impression: Did former RCW 71A.10.020(3)[1] create a separate category of development disability eligibility based exclusively on an applicant's treatment needs, in particular, treatment needs for "mental retardation"? The Department of Social Health Services (DSHS) appeals the superior court's decision: (1) vacating the DSHS Board of Appeal's (Board) Final Order, which denied developmental disability benefits to Durrell Slayton[2]; (2) remanding to the DSHS's Division of Developmental Disabilities (DDD) to determine *998 whether Slayton has treatment needs similar to those required for individuals with mental retardation, which the superior court ruled would entitle him to state developmental disability benefits; and (3) order denying reconsideration. DSHS argues that (1) the superior court's remand is inappropriate because former RCW 71A.10.020(3) did not create a separate category of developmental disability based exclusively on an applicant's treatment needs; and (2) regardless of treatment needs, an individual qualifies for developmental disability benefits only if he can demonstrate a condition that applicable statutes and administrative rules recognize as a "developmental disability," which Slayton failed to do.
¶ 2 We reverse the superior court's order of remand and vacation of the Board's Final Order. We reinstate and affirm the Board's Final Order denying developmental disability benefits to Slayton. We also deny Slayton's request for attorney fees under RAP 18.1 and RCW 4.84.350(1) because he is not the prevailing party.

FACTS
¶ 3 Durrell Slayton resides at Western State Hospital, where the State involuntarily committed him at age 21 for mental health treatment in 1987, after a jury found him not guilty by reason of insanity for first degree rape of a 95 year-old nursing home patient. Now 44 years old, Slayton is currently diagnosed with schizoaffective disorder bipolar type, polysubstance abuse (in remission due to a controlled setting), paraphilia NOS (rape), antisocial personality disorder, borderline personality trait, and mild mental retardation. Slayton also has a history of drug use, beginning at age 12, but the record contains conflicting information about whether, and to what degree, Slayton exhibited developmental delays before age 18. The Board, however, found that Slayton failed to prove that his mild mental retardation began before he turned 18. Slayton did not appeal these findings to the superior court; nor does he challenge these findings here.

I. Agency Termination and Denial of Developmental Disability Benefits
¶ 4 In 2006, at age 39 Slayton applied for benefits from DSHS's Division of Developmental Disabilities (DDD). After determining that he was eligible for benefits based on his diagnosis of mental retardation, the DDD granted Slayton's application. Following further review of Slayton's records, however, the DDD (1) concluded that its original developmental disability eligibility decision had been based "on insufficient and possibly erroneous evidence," (2) determined that Slayton did not, in fact, meet statutory and administrative rule requirements for eligibility under the category of mental retardation or any other category of developmental disability eligibility, (3) reversed its earlier decision, and (4) notified Slayton that it would terminate his benefits in 2007. Administrative Record (AR) at 22.
¶ 5 Slayton appealed and requested a hearing before an administrative law judge (ALJ). The hearing focused on whether Slayton was eligible for developmental disability benefits under the "other condition" category; therefore, the hearing did not address whether Slayton met the requirements for eligibility under the statutory "developmental disability" category, including mental retardation, cerebral palsy, epilepsy, autism, or "another neurological . . . condition."[3] As DSHS accurately summarizes in its opening brief, Slayton made three alternative arguments at the administrative hearing.
¶ 6 First, Slayton argued that he had an eligible "other condition" based on his diagnosis of Alcohol Related Neurodevelopmental Disorder (ARND). AR at 30. Second, he argued that his diagnosis of "mild mental retardation" constituted an eligible "other *999 condition." AR at 34. Third, and relevant to this appeal, he argued that he was eligible for developmental disability benefits because his treatment needs are "similar to that required for individuals with mental retardation," independent of whether he had been diagnosed with a listed qualifying developmental disability. AR at 37 (quoting WAC XXX-XXX-XXXX(1)(a)); former RCW 71A.10.020(3). Following an evidentiary hearing, the ALJ ruled that Slayton was not eligible for developmental disability benefits on these grounds. The ALJ "affirmed" the DDD's denial of Slayton's developmental disability eligibility and termination of benefits. AR at 89.
¶ 7 Slayton appealed the ALJ's decision to the DSHS Board of Appeals. In its "Review Decision and Final Order," AR at 1, the Board also affirmed the DDD's termination of Slayton's benefits. The Board found that: (1) ARND "is currently not a medically recognized diagnosis," AR at 29, and does not "by definition" result in cognitive and adaptive skills deficits,[4] AR at 33; and (2) "even if mild mental retardation is considered an `other condition,'" Slayton failed to prove onset of that condition before the age of 18.[5] AR at 36. The Board also concluded that former RCW 71A.10.020, which defines developmental disability benefits eligibility, does not include a separate category of eligibility based exclusively on the applicant's treatment needs, absent the applicant's demonstration of a qualifying diagnosis. The Board ruled that the DDD had properly terminated Slayton's developmental disability benefits.

II. Superior Court Review
¶ 8 Slayton filed a petition for judicial review under the "Administrative Procedure Act" (APA), chapter 34.05 RCW. He asked the superior court to reverse the Board's Final Order denying him developmental disability benefits and to invalidate WAC XXX-XXX-XXXX(2) and WAC XXX-XXX-XXXX as "arbitrary and capricious, outside the scope of the agency's authority, and [in] violat[ion] [of] the governing Developmental Disabilities statute." Clerk's Papers (CP) at 4.
¶ 9 The superior court ruled that: (1) former RCW 71A.10.020 included a separate category of developmental disability eligibility based exclusively on the applicant's treatment needs, independent of the applicant's demonstration of a qualifying diagnosis, see CP at 121; and (2) "the category `similar treatment' . . . is not one that requires a diagnosis of the type required by the other categories [in former RCW 71A.10.020(3)]." Record of Proceedings (RP) (June 15, 2009) at 17. The superior court vacated the Board's affirmance of the DDD's denial of benefits and remanded to the DDD to determine whether Slayton has "a condition that requires treatment similar to that required for individuals with mental retardation."[6] CP at 121.
¶ 10 DSHS appeals the superior court's order of remand to the DDD and vacation of the Board's final order denying developmental disability benefits to Slayton and order on reconsideration. We reverse the superior court and affirm the Board.

ANALYSIS
¶ 11 DSHS argues that: (1) the superior court misconstrued former RCW 71A.10.020(3) by interpreting "similar treatment" as a distinct category of developmental *1000 disability eligibility based exclusively on an applicant's treatment needs (with no required showing of an identifiable qualifying developmental disability), Br. of Appellant at 15; (2) because Slayton failed to demonstrate a qualifying developmental disability, the DDD properly denied him developmental disability benefits; and (3) therefore, the superior court's remand and reversal of the Board's final order were unwarranted. We agree.
¶ 12 Slayton argues to the contrary that, despite his failure to demonstrate diagnosis of a qualifying developmental disability, he is entitled to developmental disability benefits, to be determined on remand, because he requires "`treatment similar to that required for [individuals with] mental retardation.'"[7] Br. of Resp't at 3 (quoting former RCW 71A.10.020(3)). This argument fails.

I. Standards of Review
¶ 13 As DSHS correctly notes, the Administrative Procedure Act governs our review of the superior court's ruling that vacated the Board's affirmance of the DDD's denial of developmental disability benefits to Slayton and remanded to the DDD for a new determination of benefits under the superior court's reading of the applicable statutory provisions. See generally RCW 34.05.570; Utter v. Dep't of Soc. & Health Servs., 140 Wash.App. 293, 299, 165 P.3d 399 (2007) (citing Burnham v. Dep't of Soc. & Health Servs., 115 Wash.App. 435, 438, 63 P.3d 816 (2003)). We apply the APA standards directly to the agency record, "`sitting in the same position as the superior court,'" which was also sitting in its appellate capacity. Utter, 140 Wash.App. at 299, 165 P.3d 399 (quoting City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 136 Wash.2d 38, 45, 959 P.2d 1091 (1998)).
¶ 14 We give substantial weight to an agency's interpretation of its own eligibility criteria for developmental disability benefits, as well as considerable deference to the agency's expertise and interpretation of its own rules. See D.W. Close Co. v. Dep't of Labor & Indus., 143 Wash.App. 118, 129, 177 P.3d 143 (2008) (citing Pacific Wire Works, Inc. v. Dep't of Labor & Indus., 49 Wash. App. 229, 236, 742 P.2d 168 (1987)); Ballinger v. Dep't of Soc. & Health Servs., 104 Wash.2d 323, 336, 705 P.2d 249 (1985) (citing Wash. State Liquor Control Bd. v. Wash. State Pers. Bd., 88 Wash.2d 368, 379, 561 P.2d 195 (1977)). Under the APA, the challenging party, here, Slayton, bears the burden of demonstrating the invalidity of the agency decision. RCW 34.05.570(1)(a).
¶ 15 In interpreting a statute, we look first to its plain language. State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007) (citing State v. J.P., 149 Wash.2d 444, 449, 69 P.3d 318 (2003)). If the statute's plain language is unambiguous, then our inquiry ends, and we enforce the statute according to its plain meaning. Armendariz, 160 Wash.2d at 110, 156 P.3d 201.

II. Former RCW 71A.10.020
¶ 16 The plain meaning of former RCW 71A.10.020 is clear. It provides developmental disability benefits to an individual who demonstrates a qualifying "developmental disability,"[8] defined as follows:
Developmental disability means a disability attributable to mental retardation, cerebral palsy, epilepsy, autism, or another neurological or other condition of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation, which disability originates before the individual attains age eighteen, which has continued or can be expected to continue indefinitely, *1001 and which constitutes a substantial handicap to the individual.
Former RCW 71A.10.020(3) (emphasis added).[9] This statute plainly says that an individual has a benefit-qualifying developmental disability if he has "a disability attributable to" a "neurological or other condition" identified by DSHS as having certain attributes.[10] One such potential attribute is that the "condition" "require[s] treatment similar to that required for individuals with mental retardation" if such condition existed or was recognized before age 18.[11] Former RCW 71A.10.020(3) (emphasis added).
¶ 17 Contrary to Slayton's assertions, we agree with DSHS that former RCW 71A.10.020(3) does not provide that an individual has a qualifying developmental disability solely because he requires treatment similar to treatment required for mental retardation. Rather, Slayton must have a recognizable "condition" before his treatment needs can be considered. The language "requir[ing] treatment similar to" is not its own distinct category qualifying an individual for developmental disability benefits under former RCW 71A.10.020(3). Consistently, the phrase "other condition" modifies the clause "to require treatment similar to that required for individuals with mental retardation," such that this phrase and this clause are read and apply together. Former RCW 71A.10.020(3).
¶ 18 As DSHS further correctly notes, the statutory language "closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation" corresponds to the introductory phrase "another neurological or other condition," not to the word "individual," as Slayton's argument implies. Former RCW 71A.10.020(3). In other words, the statute's plain language may entitle an individual to developmental disability benefits if his diagnosed qualifying development disability has its origin in a "neurological or other condition" "closely related to mental retardation" or that "require[s] treatment similar to [the treatment] required for individuals with mental retardation." Former RCW 71A.10.020(3).
¶ 19 We disagree, therefore, with the superior court's interpretation of former RCW 71A.10.020(3). We hold that the superior court erred in concluding that former RCW 71A.10.020(3) requires the DDD to examine Slayton's individual treatment needs on remand, compare those needs with treatment required by an individual with mental retardation, and then redetermine Slayton's eligibility for developmental disability benefits.

*1002 III. Failure to Demonstrate Qualifying Developmental Disability or Condition
¶ 20 Slayton had the opportunity below to demonstrate a qualifying developmental disability or an "other condition." He failed. The Board found that: (1) Slayton did not prove he suffered from mild mental retardation before the age of 18, as former RCW 71A.10.020(3) and WAC XXX-XXX-XXXX(1)(d) require; (2) his ARND (Alcohol Related Neurodevelopmental Disorder) does not, by definition, result in both intellectual and adaptive skill deficits as WAC XXX-XXX-XXXX(1) requires; and (3) his ARND was not, at that time, a medically diagnosable condition.
¶ 21 Now Slayton also fails to satisfy his burden on appeal to show that the DDD erred in denying him developmental disability benefits under former RCW 71A.10.020(3). Because he does not challenge any of the Board's findings noted above, they are verities on appeal. See Hilltop Terrace Homeowner's Ass'n v. Island Cnty., 126 Wash.2d 22, 30, 891 P.2d 29 (1995) (citing Shoreline Cmty. Coll. Dist. 7 v. Emp't Sec. Dep't, 120 Wash.2d 394, 842 P.2d 938 (1992)). Thus, on the record before us, Slayton still does not show that he has an "other condition . . . requir[ing] treatment similar to that required for individuals with mental retardation" that qualifies him for developmental disability benefits under former RCW 71A.10.020(3).
¶ 22 It is undisputed that Slayton has multiple mental health diagnoses, including current mild mental retardation, all or some of which may warrant some type of other benefits. But none of these is a condition qualifying him for developmental disability benefits under former RCW 71A.10.020(3). Regardless of his treatment needs, an individual qualifies for benefits only on demonstrating a condition that is a developmental disability recognized under applicable statutes and administrative rules.[12] Slayton has not demonstrated such a statutorily qualifying developmental disability.[13]
¶ 23 Although the Board recognized that Slayton suffers from long-term psychiatric and behavioral disorders, for which he has been hospitalized for over 20 years, it could not award him developmental disability benefits on that basis:
When it is impossible to determine the extent to which adaptive functioning results from an eligible condition as opposed to co-occurring conditions, disorders, or illnesses, [the] DDD will deny eligibility.
AR at 8 (citing WAC XXX-XXX-XXXX(1)(b), WAC XXX-XXX-XXXX(2)). Because Slayton failed to demonstrate a qualifying "developmental disability" to the DDD, the DDD properly denied Slayton developmental disability benefits. Thus, there was no legal basis for the superior court's remand and vacation of the Board's Final Order.
¶ 24 Accordingly, we reverse the superior court's ruling, vacate the superior court's order of remand, and affirm the Board's Final Order denying Slayton developmental disability benefits. We also deny Slayton's request for attorney fees under RAP 18.1 and RCW 4.84.350(1), because he is not the prevailing party.
We concur: QUINN-BRINTNALL and VAN DEREN, JJ.
NOTES
[1] The legislature revised RCW 71A.10.020(3) in 2010 to reflect the need to use respectful language in describing disabilities. See Laws of Washington 2010, ch. 94 § 21. Intending no disrespect, we cite former RCW 71A.10.020(3) and use its terms and language as referenced by the parties in their briefing and arguments in this case. We note, however, the legislature has now replaced the term "mental retardation" with the term "intellectual disability."
[2] DSHS's Division of Developmental Disabilities (DDD) denied Slayton developmental disability benefits because he failed to demonstrate a qualifying developmental disability under WAC XXX-XXX-XXXX and former RCW 71A.10.020(3). Nevertheless, he has been continuously institutionalized at Western State Hospital since 1987, when a jury acquitted him of first degree rape by reason of insanity. At oral argument, DSHS stated (and Slayton did not dispute) that Slayton currently receives, and will continue to receive, DSHS benefits based on his mental illness, regardless of whether he also qualifies for developmental disability benefits.
[3] See former RCW 71A.10.020(3), which provides:

Developmental disability means a disability attributable to mental retardation, cerebral palsy, epilepsy, autism, or another neurological or other condition of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation, which disability originates before the individual attains age eighteen, which has continued or can be expected to continue indefinitely, and which constitutes a substantial handicap to the individual.
[4] See WAC XXX-XXX-XXXX, which states:

How do I meet the definition for an "other condition" similar to mental retardation?
. . .
(1) You have a diagnosis of a condition or disorder that by definition results in both intellectual and adaptive skills deficits.
[5] The Board's findings are not at issue in this appeal. Although both DSHS and Slayton have briefed additional issues, the central issue here is whether former RCW 71A.10.020(3) created a separate category of developmental disability benefits eligibility based exclusively on an applicant's treatment needs, in particular mental retardation treatment needs. Because we hold that the statute does not create such a treatment-based category, we do not address the parties' additional arguments, which our holding renders irrelevant.
[6] The superior court declined to invalidate the developmental disability statutes that Slayton challenged in his petition for judicial review. Slayton does not, however, raise these issues on cross appeal.
[7] As DSHS notes in its brief, Slayton does not assign error to any of the Board's findings of fact. Therefore, we treat these findings as verities on appeal. See Hilltop Terrace Homeowner's Ass'n v. Island Cnty., 126 Wash.2d 22, 30, 891 P.2d 29 (1995) (citing Shoreline Cmty. Coll. Dist. 7 v. Emp't Sec. Dep't, 120 Wash.2d 394, 842 P.2d 938 (1992)).
[8] As DSHS correctly notes, the legislature charged it with developing and applying eligibility criteria for developmental disability services. RCW 71A.16.020(2). The determination of what constitutes a qualifying condition is within the particular expertise of DSHS, specifically through its Division of Developmental Disabilities (DDD), the agency division whose denial of benefits is at issue here. WAC XXX-XXX-XXXX.
[9] See also WAC XXX-XXX-XXXX ("You become a client of the division of developmental disabilities (DDD) if you apply for eligibility with DDD and DDD determines that you have a `developmental disability' as defined in this chapter.").
[10] The legislature has commanded DSHS to define "another neurological or other condition" through rule-making as follows:

By January 1, 1989, the department shall promulgate rules which define neurological or other conditions in a way that is not limited to intelligence quotient scores as the sole determinant of these conditions, and notify the legislature of this action.
Former RCW 71A.10.020(3). Accordingly, DSHS has promulgated WAC XXX-XXX-XXXX, which lists the determinants of "neurological conditions," and WAC XXX-XXX-XXXX, which lists the determinants of "other condition."
Slayton would be entitled to developmental disability benefits under former RCW 71A.10.020(3) only if he has a "neurological or other condition . . . requir[ing] treatment similar to that required for individuals with mental retardation." Former RCW 71A.10.020(3) (emphasis added). This "other condition" must: (1) have originated before age eighteen, former RCW 71A.10.020(3); WAC XXX-XXX-XXXX(1)(d); and (2) by definition, result in both intellectual and adaptive skill deficits. WAC XXX-XXX-XXXX(1). Slayton's diagnosis of mild mental retardation fails under the first requirement. Slayton's ARND also fails under the second requirement; moreover, the Appeal Board concluded that ARND "[wa]s currently not a medically recognized diagnosis." AR at 28. Thus, neither Slayton's mild mental retardation nor his ARND is an "other condition" under former RCW 71A.10.020(3). Consequently, he does not have an "other condition . . . requir[ing] treatment similar to that required for individuals with mental retardation" that qualifies him for developmental disability benefits under former RCW 71A.10.020(3).
[11] See also WAC XXX-XXX-XXXX, which reiterates that an applicant for developmental disability benefits must have exhibited a qualifying condition before he reached the age of 18.
[12] See WAC XXX-XXX-XXXX.
[13] Slayton produced evidence of two disabilities, each of which, he argued, was a qualifying "other condition" under former RCW 71A.10.020(3):(1) ARND, AR at 8; and (2) mild mental retardation. The Board found that ARND "[was] currently not a medically recognized diagnosis" for purposes of former RCW 71A.10.020, AR at 29, and did not "by definition" result in cognitive and adaptive skills deficits under WAC XXX-XXX-XXXX(1). AR at 33. The Board also found that, "even if mild mental retardation is considered an `other condition'" under the statute, Slayton failed to prove the onset of that condition before the age of 18, as required. AR at 36.