[No. 24971-1-I.    Division One.    May 13, 1991.]

THE STATE OF WASHINGTON, *Respondent,* v. MARTIN
EISENMAN, *Appellant.*

*Dawn K. Monroe* of *Washington Appellate Defender
Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* for respondent.

[As amended by order of the Court of Appeals August 29, 1991.]

FORREST, J. — Martin Eisenman appeals from his conviction of second degree burglary, arguing that the trial court erred in allowing his prior convictions into evidence, and challenging the assessment of costs. We affirm.

■ Eisenman's assignment of error to the admission of his convictions is based on *State v. Burton.*[1] Since filing the briefs, *Burton* has been overruled by *State v. Ray*, 116 Wn.2d 531, 806 P.2d 1220 (1991). *Ray* explicitly holds that theft crimes are per se admissible under ER 609(a)(2), hence, Eisenman's convictions were properly admitted.

APPLICABILITY OF *STATE v. RAY*

■ In his petition for rehearing, Eisenman asserts that since *State v. Ray, supra,* was decided subsequent to his trial it cannot be applied to validate the admission of his convictions. We address the issue but deny any relief. Eisenman is correct that any retroactive effect of judicial decisions is subject to due process and ex post facto limitations.[2] "[W]here a court overrules a prior decision so as to enlarge the scope of criminal liability, [due process requires that] the new rule must be applied prospectively only." *State v. Gore*, 101 Wn.2d 481, 489, 681 P.2d 227 (1984). A new law violates the ex post facto prohibition if it (1) aggravates a crime; (2) imposes more severe punishment; or (3) permits less or different testimony to convict the offender.

---

[1] 101 Wn.2d 1, 676 P.2d 975 (1984).

[2] *State v. Henderson*, 50 Wn. App. 158, 160, 747 P.2d 504 (1987), *aff'd*, 114 Wn.2d 867, 792 P.2d 514 (1990).

On the other hand, a change in the law does not violate the the ex post facto provision if it neither increases the punishment for an offense nor alters the ingredients of the offense, the ultimate facts necessary to establish guilt, or the degree of proof necessary. [*State v.*] *Edwards*, 104 Wn.2d [63,] at 71 [701 P.2d 508 (1985)] (citing *Hopt v. Utah*, 110 U.S. 574, 590, 28 L. Ed. 262, 4 S. Ct. 202 (1884)).

*State v. Henderson*, 50 Wn. App. 158, 160, 747 P.2d 504 (1987), *aff'd*, 114 Wn.2d 867, 792 P.2d 514 (1990).

■ The *Ray* holding that theft convictions are per se admissible under ER 609(a)(2) does not increase the punishment, change the elements of the offense, nor change the facts or the degree of proof required to establish guilt. Accordingly, the admission of Eisenman's convictions under *Ray* is proper.

The rule concerning retroactive application of evidentiary rulings is authoritatively stated in *Hopt v. Utah*, 110 U.S. 574, 590, 28 L. Ed. 262, 4 S. Ct. 202 (1884):

Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed, might, in respect of that offence, be obnoxious to the constitutional inhibition upon *ex post facto* laws. But alterations which do not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt, but — leaving untouched the nature of the crime and the amount or degree of proof essential to conviction — only remove existing restrictions upon the competency of certain classes of persons as witnesses, relate to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure.

The *Hopt* analysis was reexamined and expressly approved by the United States Supreme Court in *Dobbert v. Florida*.[3] In upholding a conviction in a capital case, the *Dobbert* Court stated that "[e]ven though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto*." *Dobbert*, 432 U.S. at 293. Although no Washington case has addressed the precise point, *Hopt*

---

[3] 432 U.S. 282, 53 L. Ed. 2d 344, 97 S. Ct. 2290 (1977).

has been cited with approval by a number of Washington courts.[4]

*State v. Brown*[5] (*Brown* II) does not suggest a different result. The court there applied its holding — that a defendant had to testify to preserve errors under ER 609(a) — prospectively only. The *Brown* court noted that retroactivity per se was not the issue, but rather whether to apply the rule there adopted[6] to the defendant Brown. Had *Brown* applied retroactively, it would unfairly prejudice defendants relying on prior Washington law[7] because any defendant who chose not to testify in view of an in limine ruling admitting certain convctions would be deprived of the opportunity to challenge their admission. No such considerations are here present. Eisenman did testify, the jury heard his version of the facts and he now has his opportunity to challenge admission of the convictions.

We agree with the *Hopt* analysis and hold that the rule announced in *Ray* that theft crimes are per se admissible under ER 609(a)(2) applies retroactively to the evidentiary rulings in Eisenman's trial.

### ASSESSMENT OF COSTS

Eisenman argues that the trial court failed to find a present or future ability to pay costs, and that it therefore erred in assessing $70 in court costs and $100 for the victim assessment fund. The State contends that Eisenman has the ability to pay the very minimal $17 a year

---

[4]*State v. Edwards*, 104 Wn.2d 63, 71, 701 P.2d 508 (1985); *State v. Pope*, 73 Wn.2d 919, 924, 442 P.2d 994 (1968); *State v. Clevenger*, 69 Wn.2d 136, 141, 417 P.2d 626 (1966); *State v. Henderson*, 50 Wn. App. 158, 160, 747 Wn.2d 504 (1987), *aff'd*, 114 Wn.2d 867, 792 P.2d 514 (1990); *State v. Slider*, 38 Wn. App. 689, 694-95, 688 P.2d 538 (1984), *review denied*, 103 Wn.2d 1013 (1985).

[5]113 Wn.2d 520, 782 P.2d 1013, 787 P.2d 906, 80 A.L.R.4th 989 (1989).

[6]The rule adopted by the Washington Supreme Court was from *Luce v. United States*, 469 U.S. 38, 83 L. Ed. 2d 443, 105 S. Ct. 460 (1984).

[7]*State v. Burton, supra.*

for 10 years to fulfill his obligation, and that this does not infringe on his right to counsel.

RCW 10.01.160 authorizes a trial court to impose costs and attorney fees on a convicted indigent if he is able to pay, or will be able to pay. In *Fuller v. Oregon*,[8] the United States Supreme Court set out conditions that recoupment statutes must satisfy to be constitutional. Fuller was assessed fees and expenses incurred by his attorney and investigator under an Oregon recoupment statute identical to RCW 10.01.160, which was enacted in Washington after *Fuller.* The central question was whether Fuller's right to counsel was compromised by the assessment of fees. The Court determined that recoupment in that case was constitutional because the Oregon statute contained important safeguards against imposition of fees against defendants who are indigent and will likely remain so.

Those safeguards were delineated more fully by the Washington State Supreme Court in *State v. Barklind.*[9] Like *Fuller, Barklind* also involved a challenge to the assessment of attorney fees. After pleading guilty, Barklind was assessed $150 for a portion of the cost of his court-appointed attorney, to be paid at the rate of $25 a month. The court determined that Barklind's right to counsel was not impeded by the trial court's assessment of fees, because the assessment followed the requirements of *Fuller.*[10]

---

[8]417 U.S. 40, 40 L. Ed. 2d 642, 94 S. Ct. 2116 (1974).

[9]87 Wn.2d 814, 557 P.2d 314 (1976).

[10]The *Barklind* court, at pages 817-18, laid out the requirements for a recoupment statute as follows:

1. Repayment must not be mandatory;
2. Repayment may be imposed only on convicted defendants;
3. Repayment may only be ordered if the defendant is or will be able to pay;
4. The financial resources of the defendant must be taken into account;
5. A repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end;
6. The convicted person must be permitted to petition the court for remission of the payment of costs or any unpaid portion;

*State v. Earls*[11] followed from *Fuller* and *Barklind*. In *Earls*, the trial court ordered the defendant to pay attorney fees of $6,125.90 and costs of $2,608.43. On appeal the court reversed imposition of the costs, citing the lower court's failure to make findings concerning Earls' "present or future ability to pay, his financial resources, or the likelihood indigency will change." *Earls*, at 196. The *Earls* court also stated that although compensation paid jurors cannot be recouped,[12] a $50 jury fee may be recouped, as may a $70 court filing fee. The *Earls* court did not determine whether a $70 filing fee and a victim assessment fee required a separate formal finding if there are no other fees assessed.

The court in *State v. Hayes*[13] went a step further. Relying on *Earls*, it held that the trial court erred in ordering the defendant to pay court costs ($101), attorney fees ($447), and contribute to a drug fund ($100) and a victim assessment fund ($70), because the trial court should have entered specific findings on the defendant's ability to pay, his financial resources, and the likelihood that his indigency status will change. Without adequate explanation, the *Hayes* court lumped all fees and costs together, finding that there was no distinction between attorney fees and contributions to a drug fund.[14]

---

7. The convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court order or a failure to make a good faith effort to make repayment.

[11]51 Wn. App. 192, 752 P.2d 402 (1988).

[12]AGO 4, at 6 (1978).

[13]56 Wn. App. 451, 783 P.2d 1130 (1989).

[14]The court apparently based this on an equal protection argument that "[a] poor person subject to an order requiring payment of money could be incarcerated [for contempt] when a wealthy person would not." *Hayes*, at 453. This argument is not supported by *Barklind* or *Fuller*, which state that a convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court. From *Barklind* and *Fuller* it follows that *any* person, rich or poor, may be incarcerated for an

■ We do not interpret *Hayes* to require that the imposition of every fee or cost requires formal findings, especially if the amount is minimal, so long as the imposition does not infringe on the right to counsel. In the present case, the court assessed Eisenman a total of $170. There is no justification in *Fuller*, *Barklind*, or *Earls* for the proposition that a filing fee and a victim assessment amounting to $17 a year for 10 years infringes on a person's right to counsel.[15] It is not even clear that the $100 victim assessment should be considered a "cost", because it is imposed under a separate statute that is not concerned with recoupment of costs incurred by the State, RCW 7.68.035, and does not appear discretionary.[16] In any case, it is a rare defendant who cannot afford such a minimal payment, and if costs are imposed on a defendant who truly cannot pay, or later is unable to pay, that person will not be subject to incarceration.

Requiring formal findings where the assessments amount to a few hundred dollars would cost the public more than it would gain, and is unnecessary to protect the defendant in light of the *Barklind* conditions. Indeed, the court utilized this reasoning in waiving Eisenman's attorney fees, stating that "it would cost more to try to collect it than the money involved would be." We find that where Eisenman's attorney fees were requested by the

---

intentional refusal to obey a court order, and *no* person will be incarcerated if he or she is without funds. Thus *Hayes* is incorrect — a person's economic status has no bearing on whether he or she will be incarcerated.

[15]One might conclude that if it does, "it is a behavioral problem which reflects more upon the attitude of the defendant than upon a society against which a crime has been committed and which has guaranteed that defendant free counsel." *Barklind*, at 816-17.

[16]RCW 7.68.035(1) states in part: "there shall be imposed by the court upon such convicted person a penalty assessment. The assessment shall be in addition to any other penalty or fine imposed by law and shall be one hundred dollars for each case . . . ." RCW 7.68.035 is thus not a recoupment statute because an assessment to a victim fund is not a cost "limited to expenses specially incurred by the state in prosecuting the defendant". RCW 10.01.160(2).

prosecutor and disallowed, the trial court impliedly concluded that Eisenman had an ability to pay the $70 in court costs and $100 for the victim assessment fund. Accordingly, we hold that the court did not err in assessing the $70 in costs and the $100 for the victim assessment fund without a formal finding as to Eisenman's ability to pay, his financial resources, or the likelihood his indigency will change.

Affirmed.

BAKER and AGID, JJ., concur.

After modification, further reconsideration denied August 29, 1991.