

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE APR 2 8 2016

Madsen C.J.
CHIEF JUSTICE

This opinion was filed for record
at 8:00 am on April 28, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 90188-1 |
| Respondent, | ) | |
| v. | ) | En Banc |
| CHAD EDWARD DUNCAN, | ) | |
| Petitioner. | ) | Filed  APR 2 8 2016 |

GONZÁLEZ, J.—This case presents two questions: (1) whether Chad Duncan can challenge the legal financial obligations (LFOs) imposed by the trial court for the first time on appeal and (2) whether the police properly searched his car for a gun after a drive-by shooting. We answer yes to both questions, affirm Duncan's conviction, and remand for resentencing with proper consideration of his ability to pay LFOs.

## FACTS

A little after midnight in Yakima one summer night in 2009, someone in a car shot into a home, grazing Kyle Mullins' head. Other people in the home called 911 for medical assistance and to report the shooting. Callers

described the car as white and possibly a Subaru or Impala. Officers were dispatched and stopped Duncan's white Ford Taurus. Officers removed Duncan and his two passengers from the car at gunpoint, ordered them to the ground, handcuffed them, and put them in separate police cars. Without a warrant, officers opened the doors and found shell casings on the floor and a gun between the front passenger seat and the door. One officer removed the gun and placed it into an evidence bag in his own patrol car. The passengers told the police that Duncan had fired from the car and tossed the gun on the front floorboards. After the car was towed to a police annex, police obtained a warrant and made a more thorough search.

Duncan was charged with six counts of first degree assault and one count of unlawful possession of a firearm. Duncan moved to suppress the evidence and confessions that flowed from the traffic stop on several grounds, including that the police had insufficient grounds to stop him and that their initial warrantless search of his car was improper. At the pretrial suppression hearing, held a year and a half after the events of that summer night, the judge found that the stop was justified and that the search was reasonable, and denied the motion.

The jury returned guilty verdicts on all charges and found by special verdicts that Duncan was armed with a firearm. The judge sentenced

Duncan to 1,159 months of incarceration, the top of the standard range. Duncan's projected release date is March 26, 2099. Mot. & Affidavit To Suppl. R., Ex. A at 12. With no discussion and over no objection, the trial judge ordered Duncan to pay $2,905.54 in restitution, costs, assessments, and fines; $50 per day toward the cost of incarceration for the duration of his prison sentence; and the costs of his medical care. The State acknowledges that there was no inquiry into Duncan's ability to pay at sentencing. Am. Br. of Resp't at 24. Assuming Duncan does not accrue good time and incurs no medical expenses, amici calculates that the principal alone of his LFOs will be nearly two million dollars. Amici Curiae Br. of ACLU[1] of Wash. et al. at 1. This does not include any appellate costs that may be imposed under RCW 10.73.160(1).

For the first time on appeal, Duncan challenged the trial court's imposition of the LFOs on the grounds that the record did not support a finding he had or would have any likelihood of being able to pay them. Br. of Appellant at 26-27. Despite the State's suggestion that the matter be remanded for a hearing on Duncan's ability to pay, the Court of Appeals concluded "that ability to pay LFOs is not an issue that defendants overlook—it is one they reasonably waive" and declined to consider it.

---

[1] American Civil Liberties Union.

3

*State v. Duncan*, 180 Wn. App. 245, 253, 327 P.3d 699 (2014). The Court

of Appeals did not consider whether Duncan himself had reasonably waived

a challenge to the LFOs. *See id.* It largely affirmed. *Id.* at 247.[2]

We stayed consideration of Duncan's petition for review pending our

decision in *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). Order to

Stay, *State v. Duncan*, No. 90188-1 (Wash. July 9, 2014). After a mandate

was issued in *Blazina*, we granted review. *State v. Duncan*, 183 Wn.2d

1013, 353 P.3d 641 (2015).

ANALYSIS

I. *LFOs*

The imposition and collection of LFOs have constitutional

implications and are subject to constitutional limitations. *State v. Barklind*,

87 Wn.2d 814, 817, 557 P.2d 314 (1976) (citing *Fuller v. Oregon*, 417 U.S.

40, 44-47, 94 S. Ct. 2116, 40 L. Ed. 2d 642 (1974)). A constitutionally

permissible system that requires defendants to pay court ordered LFOs must

meet seven requirements:

"1. Repayment must not be mandatory;

"2. Repayment may be imposed only on convicted defendants;

---

[2] The Court of Appeals remanded to the trial court to strike a term of community custody the parties agreed was not statutorily authorized. *Duncan*, 180 Wn. App. at 247. This issue is not before us.

"3. Repayment may only be ordered if the defendant is or will be able to pay;

"4. The financial resources of the defendant must be taken into account;

"5. A repayment obligation may not be imposed if it appears there is no likelihood the defendant's indigency will end;

"6. The convicted person must be permitted to petition the court for remission of the payment of costs or any unpaid portion;

"7. The convicted person cannot be held in contempt for failure to repay if the default was not attributable to an intentional refusal to obey the court order or a failure to make a good faith effort to make repayment."

*State v. Curry*, 118 Wn.2d 911, 915-16, 829 P.2d 166 (1992) (quoting *State v. Eisenman*, 62 Wn. App. 640, 644 n.10, 810 P.2d 55, 817 P.2d 867 (1991) (citing *Barklind*, 87 Wn.2d at 814)).[3] The constitution does not require that the trial court enter formal findings, though of course it is a good practice and helpful on review. *See id.* at 915-16 (quoting *Eisenman*, 62 Wn. App. at 644 n.10). Had Duncan objected at trial to the LFOs sought by the State, the

---

[3] We recognize that the legislature has designated some of these fees as mandatory. *E.g.*, RCW 7.68.035 (victim assessment); RCW 43.43.7541 (DNA (deoxyribonucleic acid) collection fee); RCW 10.82.090(2)(d) (effectively making the principal on restitution mandatory). Others have been treated as mandatory by the Court of Appeals. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) (holding that the filing fee imposed by RCW 36.18.020(2)(h) is mandatory and courts have no discretion to consider the offender's ability to pay). While we have not had occasion to consider the constitutionality of all of these statutes, we have found that the victim penalty assessment statute was not unconstitutional on its face or as applied to the defendants in the case because there were sufficient safeguards to prevent the defendants from being sanctioned for nonwillful failure to pay. *See Curry*, 118 Wn.2d at 917.

5

trial court would have been obligated to consider his present and future ability to pay before imposing the LFOs. *Id.*

However, Duncan did not object at trial, and thus the first question we must decide is whether we should reach the issue. We recently noted that "a party generally waives the right to appeal an error unless there is an objection at trial." *State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015) (citing RAP 2.5(a)). But while appellate courts "may refuse to review any claim of error which was not raised in the trial court," they are not required to. RAP 2.5(a). Recently, in *Blazina*, we chose to exercise "our own RAP 2.5 discretion [to] reach the merits and hold that a trial court has a statutory obligation to make an individualized inquiry into a defendant's current and future ability to pay before the court imposes LFOs." 182 Wn.2d at 830.

We reached this issue in *Blazina* because we found ample and increasing evidence that unpayable LFOs "imposed against indigent defendants" imposed significant burdens on offenders and our community, including "increased difficulty in reentering society, the doubtful recoupment of money by the government, and inequities in administration." *Id.* at 835-87 (citing extensive sources). Given that, and given the fact that the trial courts had not made an individualized inquiry into the defendants'

ability to pay before imposing the LFOs, we remanded to the trial court for new sentencing hearings. *Id.* at 839.

Consistent with our opinion in *Blazina* and our other cases decided since then, we remand to the trial court for resentencing with proper consideration of Duncan's ability to pay LFOs. *See id.* at 830; *see also State v. Marks,* 185 Wn.2d 143, __ P.3d __ (2016); *State v. Licon,* noted at 184 Wn.2d 1010, 359 P.3d 791 (2015); *State v. Leonard,* 184 Wn.2d 505, 358 P.3d 1167 (2015) (per curiam); *State v. Vansycle,* noted at 183 Wn.2d 1013, 353 P.3d 634 (2015); *State v. Cole,* 183 Wn.2d 1013, 353 P.3d 634 (2015).

II. *Warrantless Protective Sweep*

We turn now to whether the warrantless search of Duncan's vehicle was lawful. Briefly, after Duncan's car was stopped and its three occupants were handcuffed in the back of separate police cars, the police "walked up to make sure there was no other occupants hiding in the vehicle." 1 CD Proceedings (Feb. 14, 2011) at 71. No one else was found, but one officer testified that he could see a gun on the floorboards. *Id.* at 72. Another testified that he saw shell casings and decided to search the car in order "to make sure we weren't going to [be] towing a car with a handgun inside that could possibly discharge." *Id.*

Duncan unsuccessfully moved to suppress the gun, shell casings, and passenger statements that flowed from the stop. However, without the benefit of *State v. Snapp*, 174 Wn.2d 177, 275 P.3d 289 (2012), the judge found the search and seizure was justified to find evidence of the crime of arrest. The judge also found the sweep of the car and the seizure of the gun were lawful because of the danger posed by an unsecured weapon in a car as it is being towed. Duncan made several challenges to the judge's CrR 3.6 ruling below that he does not renew at this court. Here, he argues that the search exceeded the permissible bounds of a protective sweep given that he and his passengers were already handcuffed and secured in separate patrol vehicles. Pet. for Review at 10.

"'As a general rule, warrantless searches and seizures are per se unreasonable.'" *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996) (quoting *State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980)).

> Nonetheless, there are a few "jealously and carefully drawn exceptions" to the warrant requirement which "provide for those cases where the societal costs of obtaining a warrant, such as danger to law officers of the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate."

*Houser*, 95 Wn.2d at 149 (internal quotation marks omitted) (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759, 99 S. Ct. 2586, 61 L. Ed. 2d 235 (1979)). The State bears the burden of showing that the search and seizure

was supported by a warrant or an exception to the warrant requirement. *Hendrickson*, 129 Wn.2d at 71 (citing *State v. Johnson*, 128 Wn.2d 431, 447, 909 P.2d 293 (1996)); *Snapp*, 174 Wn.2d at 188 (citing *State v. Kirwin*, 165 Wn.2d 818, 203 P.3d 1044 (2009)). The fruits of an unconstitutional search and seizure must be suppressed. *State v. Ladson*, 138 Wn.2d 343, 359, 979 P.2d 833 (1999) (citing *State v. Kennedy*, 107 Wn.2d 1, 4, 726 P.2d 445 (1986)).

Prior to *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), the search here would have passed constitutional muster. But in the wake of *Gant*, we reexamined the search incident to arrest exception and found it did not justify warrantless searches of vehicles for evidence of the crime of arrest once the vehicles' occupants are detained in police cars. *Snapp*, 174 Wn.2d at 197, 201. Thus, the search here cannot be justified on the first ground found by the trial court.

In the alternative, the State argues that the seizure of the gun was justified under the "plain view" exception to the warrant requirement. Suppl. Br. of Resp't at 7 (boldface omitted). However, the trial judge's order indicates he did not believe the officers could see the gun from outside the vehicle and there is nothing in this record that suggests the officers

9

needed to open the car doors to sweep the vehicle for suspects.[4] We find the plain view exception is not available under these facts.

The State also argues that this search was "essentially identical to an inventory search." *Id.* at 8. This argument is also not well presented by the facts. Inventory searches are authorized after vehicles are lawfully impounded. *E.g.*, *State v. Tyler*, 177 Wn.2d 690, 701, 302 P.3d 165 (2013) (citing *Houser*, 95 Wn.2d at 154). There is nothing in the trial judge's CrR 3.6 order or the officers' testimony at the hearing that suggests the vehicle had actually been impounded at the time the vehicle was searched and the gun was seized.

As amici curiae, the Washington Association of Prosecuting Attorneys (WAPA) and the Washington State Patrol (WSP) ask us to adopt a rule that would authorize officers to search a car whenever there is reasonable suspicion it contains a firearm and the vehicle is to be released to any third party. WSP's Amicus Curiae Br. at 5, 7; Br. of Amicus Curiae WAPA at 7-8. We may, but usually do not, reach arguments raised only by amicus. *Dragonslayer, Inc. v. Wash. State Gambling Comm'n*, 139 Wn.

---

[4] The State had prepared the order, which had stated the car contained "an unsecured firearm which was visible from outside the vehicle presented a safety risk to the officers and a danger to anyone in the area of accidently discharging while the car was being towed since a car is frequently lifted up and dropped and moved around." Clerk's Papers at 207. The trial judge struck out the words "which was visible from outside the vehicle." *Id.*

App. 433, 442, 161 P.3d 428 (2007) (citing *Noble Manor Co. v. Pierce County*, 133 Wn.2d 269, 272 n.1, 943 P.2d 1378 (1997)). While we decline to adopt so broad a rule, we find the amici's briefings helpful.

As the trial court noted, "[T]he presence of an unsecured firearm presented a safety risk to the officers and a danger to anyone in the area of accidently discharging while the car was being towed since a car is frequently lifted up and dropped." CP at 207 (stricken language omitted). A warrantless search may be justified when officers have reasonable grounds to believe that "objects likely to burn, explode or otherwise cause harm" need to be secured. *See State v. Downey*, 53 Wn. App. 543, 544-45, 768 P.2d 502 (1989) (citing Robert Utter, *Survey of Washington Search and Seizure Law: 1988 Update*, 11 U. PUGET SOUND L. REV. 421, 538-39 (1988)). Accordingly, we hold that under the community caretaking exception to the warrant requirement, officers may make a limited sweep of a vehicle when (1) there is reasonable suspicion that an unsecured weapon is in the vehicle and (2) the vehicle has or shortly will be impounded and will be towed from the scene. *See id.*

We caution, however, that the community caretaking exception is a strictly limited exception to the warrant requirement. *State v. Kinzy*, 141 Wn.2d 373, 385, 5 P.3d 668 (2000) (citing *Cady v. Dombrowski*, 413 U.S.

433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973)). It may not be used as a pretext for an investigatory search. *Houser*, 95 Wn.2d at 153 (citing *State v. Hardman*, 17 Wn. App. 910, 913, 567 P.2d 238 (1977)). It will only rarely justify intrusion into a private place or vehicle after an arrest. *See Kinzy*, 141 Wn.2d at 384-86; *see also* Charles W. Johnson & Debra L. Stephens, *Survey of Washington Search and Seizure Law: 2013 Update*, 36 SEATTLE U.L. REV. 1581, 1703-04 (2013) (describing cases). In this case, we recognize that it is troubling that the trial judge denied the suppression motion in part because he found the search was justified in order to find evidence of the crime given—making it difficult to say that the officers were not motivated to find evidence. However, given the facts of this case and the fact that the sweep of the vehicle occurred before our opinion in *Snapp*, 174 Wn.2d 177, was announced, we are confident that the desire to remove an unsecured gun from the vehicle was not here used as a pretext for an otherwise unlawful search. *See Houser*, 95 Wn.2d at 153 (citing *Hardman*, 17 Wn. App. at 913); *see also Ladson*, 138 Wn.2d at 353.

CONCLUSION

We find the LFOs imposed on Duncan are indistinguishable from those imposed on Blazina and remand for resentencing with proper

12

consideration of his ability to pay. We conclude that under these facts, the limited search of the vehicle was lawful and affirm Duncan's conviction.

_González, J._

WE CONCUR:

_Madsen, C.J._

_Johnson, J._

_Owens, J._

_Fairhurst, J._

_Stephens, J._

_Wiggins, J._

_Gordon McCloud, J._

_Yu, J._