IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49427-2-II |
| Respondent, | |
| v. | |
| NATRONE D. BOSTICK, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Natrone D. Bostick appeals his sentence for first degree kidnapping and first degree assault, arguing that the sentencing court failed to conduct a sufficient inquiry into his ability to pay before imposing discretionary legal financial obligations (LFOs). Bostick also raises several challenges to his convictions in a statement of additional grounds (SAG).

We hold that the sentencing court failed to conduct a sufficient inquiry into Bostick's current and future ability to pay discretionary LFOs. We also hold that Bostick's SAG claims fail. Accordingly, we affirm Bostick's convictions, reverse the sentencing court's imposition of discretionary LFOs, and remand for the sentencing court to conduct the proper inquiry required under *State v. Blazina*[1] before determining the imposition of any discretionary LFOs.

FACTS

On May 6, 2016, Bostick was charged by amended information with first degree robbery, first degree burglary, first degree kidnapping, and first degree assault. The affidavit for probable cause filed to support the charges contained information from the victim, Bostick, and Samath

---

[1] 182 Wn.2d 827, 344 P.3d 680 (2015).

Hem. The affidavit stated that Bostick and Hem entered the victim's home with the intent of robbing the victim. Bostick had a pistol with him. The victim told police that Bostick and Hem entered his home, dragged him to his bedroom and tied him up, struck him in the face several times, pointed a pistol at him demanding the combination to his safe, and took a television and checkbooks from his home.

On June 9, Bostick pleaded guilty to first degree kidnapping and first degree assault. Bostick signed the statement of defendant on plea of guilty (plea statement), which stated that he was informed and fully understood that he was charged with first degree kidnapping and first degree assault. Bostick initialed several paragraphs in the plea statement, including (1) the paragraph stating that he understood the trial and appeal rights he gives up by pleading guilty[2] and (2) the paragraph stating that no one may appeal the sentence if the trial court imposed a standard range sentence and that either the State or Bostick can appeal the sentence if the trial court imposed

---

[2] Bostick initialed paragraph 5 of the plea statement, which reads:

**I Understand I Have the Following Important Rights, and I Give Them Up by Pleading Guilty**:

(a)     The right to a speedy and public trial by an impartial jury in the county where the crime was allegedly committed;
(b)     The right to remain silent before and during trial, and the right to refuse to testify against myself;
(c)     The right at trial to hear and question the witnesses who testify against me;
(d)     The right at trial to testify and to have witnesses testify for me. These witnesses can be made to appear at no expense to me;
(e)     The right to be presumed innocent unless the State proves the charge beyond a reasonable doubt or I enter a plea of guilty;
(f)     The right to appeal a finding of guilt after a trial.

Clerk's Papers at 17-18.

an exceptional sentence. Bostick's plea statement also stated that his lawyer had explained the plea statement to him, they had fully discussed it, he fully understood the plea statement, and that he had no further questions.

During the plea colloquy, defense counsel represented to the trial court that he had met with Bostick a number of times, that he had met with Bostick three times just that day, and that he had gone over the plea forms with Bostick. The trial court then made several inquiries of Bostick.

> THE COURT: All right. Mr. [Bostick], do you agree with what your attorney has told me here so far?
>
> MR. BOSTICK: Yes, Your Honor.
>
> THE COURT: Did you review these statements carefully with him?
>
> MR. BOSTICK: Yes, Your Honor.
>
> THE COURT: Did you read them and understand them?
>
> MR. BOSTICK: Yes, Your Honor.
>
> . . . .
>
> THE COURT: Everything else on here you agree with?
>
> MR. BOSTICK: Yes.
>
> . . . .
>
> THE COURT: Do you understand the rights you have listed on pages 1 and 2 of these statements?
>
> MR. BOSTICK: Yes, Your Honor.
>
> THE COURT: Do you understand that by pleading guilty you give up those rights, there will be no trial, no witnesses, no appeal, and the only thing left will be sentencing?
>
> MR. BOSTICK: Yes, Your Honor.

THE COURT: Understanding all of those things, do you still want to plead guilty here today?

MR. BOSTICK: Yes, Your Honor.

Verbatim Report of Proceedings (VRP) (June 9, 2016) at 3-6.

On June 16, Bostick was sentenced on his guilty plea. The sentencing court imposed 180 months of total confinement. The sentencing court also followed the State's recommendation and imposed $2,772.50 in LFOs: $500.00 for a victim assessment, $200.00 for court costs (criminal filing fee), $1972.50 for attorney fees, and $100.00 for DNA collection fees.[3] But before doing so, the sentencing court asked

THE COURT: . . . With regard to the financial obligations, is there any physical or emotional or any other reason why you can't work and earn a living when you're out if you're not in custody?

MR. BOSTICK: No, Your Honor.

THE COURT: It's a matter of finding work and getting a job?

MR. BOSTICK: Yeah.

THE COURT: All right. So based on that, I'll make the finding that you have the future ability to make payments on the financial obligations which I will impose: $500 crime victim assessment, $200 filing fee, $1,972.50 attorney fee, $100 [DNA collection fee]. I'm not imposing the additional jail fee on that, given the total financial obligations here. $25 a month starting 60 days from today's date.

VRP (June 16, 2016) at 6-7. Bostick reviewed the judgment and sentence with his attorney and did not have any questions about what he had to do to comply with it. Bostick appeals.

---

[3] Defense counsel indicated that he and Bostick were in agreement with the State's recommended sentence and legal financial obligations.

No. 49427-2-II

ANALYSIS

A.     LEGAL FINANCIAL OBLIGATIONS

Bostick argues that the sentencing court failed to make a sufficient inquiry into his ability to pay prior to imposing discretionary LFOs.[4]  We agree.

We review a decision to impose discretionary LFOs for an abuse of discretion.  *State v. Clark*, 191 Wn. App. 369, 372, 362 P.3d 309 (2015).  A decision is an abuse of discretion when it is exercised on untenable grounds or for untenable reasons.  *Id.*

Before imposing discretionary LFOs, the trial court must make an individualized inquiry into the defendant's present and future ability to pay.  RCW 10.01.160(3); *Blazina*, 182 Wn.2d at 838.  "In determining the amount and method of payment of costs, the court shall take account of the financial resources of the defendant and the nature of the burden that payment of costs will impose."  RCW 10.01.160(3).  While the extent of the individualized inquiry has yet to be defined, the trial court must consider factors such as whether the defendant meets the GR 34 standard for indigency, incarceration, and the defendant's other debts, including restitution.  *Blazina*, 182 Wn.2d at 838-39.

Here, the record does not reflect that the trial court made a sufficient inquiry into Bostick's current and future ability to pay discretionary LFOs.  The trial court's inquiry was limited to two

---

[4] In this case, Bostick did not object to the imposition of LFOs at sentencing.  And the court in *Blazina* affirmed that a defendant must object to LFOs in the trial court to preserve the issue for appellate review.  182 Wn.2d at 832-34.  However, *Blazina* also indicated that review of the unpreserved LFO challenge was appropriate due to systemic problems related to LFOs.  *Id.* at 834-35.  In light of *Blazina*, and our Washington Supreme Court's decision to review unpreserved challenges to LFOs in *State v. Lyle*, 184 Wn.2d 1040, 365 P.3d 1263 (2016), *State v. Marks*, 185 Wn.2d 143, 368 P.3d 485 (2016), and *State v. Duncan*, 185 Wn.2d 430, 374 P.3d 83 (2016), we exercise our discretion under RAP 2.5(a) and review Bostick's challenge to the LFOs imposed.

5

questions about Bostick's ability to work once out of custody. Once Bostick agreed that there was no reason he could not work after being released and that it was a matter of finding a job, the trial court imposed LFOs, including $1,972.50 in discretionary attorney fees. The trial court reasoned, "So based on [Bostick's agreement on his ability to work], I'll make the finding that you have the future ability to make payments on the financial obligations which I will impose." VRP (June 16, 2016) at 7. However, the ruling did not consider other factors set forth in *Blazina*, such as a defendant's financial resources, other debts, incarceration, and whether the defendant meets the GR 34 standard for indigency.

While the State argues that Bostick is physically capable of working, that he would still be capable after serving his sentence, and that the sentencing court made a sufficient inquiry as to Bostick's ability to pay LFOs, the sentencing court's inquiry did not consider Bostick's broader financial status, consideration of which would allow the trial court to truly determine if Bostick would be able to pay LFOs even if he was able to work when out of custody. An inquiry limited to Bostick's ability to work in the future is not enough. Therefore, the record does not reflect the requisite sufficient inquiry for the trial court's decision. Accordingly, we reverse the imposition of discretionary LFOs and remand to the trial court for a sufficient inquiry into Bostick's present and future ability to pay discretionary LFOs.[5]

---

[5] Bostick also argues that the $200 court filing fee was not mandatory. However, court filing fees are mandatory. *State v. Lundy*, 176 Wn. App. 96, 102, 308 P.3d 755 (2013) ("For victim restitution, victim assessments, DNA fees, and criminal filing fees, the legislature has directed expressly that a defendant's ability to pay should not be taken into account."); RCW 36.18.020(2)(h) ("Upon conviction or plea of guilty . . . an adult defendant in a criminal case shall be liable for a fee of two hundred dollars.").

B.    SAG

    1.    Guilty Plea

Bostick argues that his guilty plea is invalid because it was not the result of a knowing, voluntary, and intelligent waiver of his rights. Specifically, he argues that he was not made aware of his limited right to appeal.[6] We disagree.

"Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." *State v. Weyrich*, 163 Wn.2d 554, 556, 182 P.3d 965 (2008). A trial court may not accept a guilty plea without first determining that a criminal defendant has entered into the plea "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." CrR 4.2(d). "A defendant does not knowingly plead guilty when he bases that plea on misinformation regarding sentencing consequences." *State v. Robinson*, 172 Wn.2d 783, 790, 263 P.3d 1233 (2011). We review whether a guilty plea was the result of a knowing, voluntary, and intelligent waiver by considering the totality of the circumstances. *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996).

Here, Bostick made a knowing, voluntary, and intelligent waiver of his rights when he pled guilty. The rights that Bostick waived were stated in his plea statement, which he initialed. And he acknowledged that he went over the appeal rights he was waiving with his attorney, read them, and understood them. While Bostick argues that he did not know that he retained a limited right

---

[6] A defendant may challenge the voluntariness of a plea for the first time on appeal because a defendant's failure to understand the sentencing consequences of a guilty plea constitutes a manifest error affecting a constitutional right. *State v. Mendoza*, 157 Wn.2d 582, 589, 141 P.3d 49 (2006). Therefore, we address this claim.

to challenge the validity of the statute, sufficiency of the information, jurisdiction of the court, or circumstances surrounding the plea, Bostick did not waive these rights, so there were no consequences as to these rights from his plea. He retained the right to make such challenges and may do so in light of his plea. *State v. Cross*, 156 Wn.2d 580, 621, 132 P.3d 80, *cert. denied,* 549 U.S. 1022 (2006). In fact, he does so here in his SAG. Therefore, we hold that this claim fails.[7]

    2.      Basis for First Degree Kidnapping Charge

Bostick argues that the prosecutor did not have a sufficient basis to charge him with first degree kidnapping. We disagree.

We review allegations of prosecutorial misconduct for an abuse of discretion. *State v. Lindsay*, 180 Wn.2d 423, 430, 326 P.3d 125 (2014). To prevail on a claim of prosecutorial misconduct, a defendant must establish that the prosecutor's conduct was improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). A prosecutor has discretion to determine the nature and number of charges to bring against a defendant. *State v. Rice*, 174 Wn.2d 884, 903, 279 P.3d 849 (2012). In making such decisions, a prosecutor must actually exercise individualized discretion in each case and each charge filed must be authorized by the legislature. *Id*.

---

[7] To the extent Bostick argues that his guilty plea was not knowing, voluntary, and intelligent because he was unaware that he was subject to consecutive sentencing, his claim is factually meritless. During the plea hearing, defense counsel stated that he went over the plea documents with Bostick, and Bostick acknowledged that he went over them with his attorney, read them, and understood them. Furthermore, Bostick initialed next to the paragraphs in the plea statement that stated the prosecutor would recommend 180 months of confinement and that his sentences for kidnapping and assault would run consecutively as serious violent offenses. Therefore, this claim is meritless.

RCW 9.94A.411(2)(a) states that prosecutors will file charges for crimes against persons "if sufficient admissible evidence exists, which, when considered with the most plausible, reasonably foreseeable defense that could be raised under the evidence, would justify conviction by a reasonable and objective fact finder."

Under RCW 9A.40.020(1)(b), (c), a person is guilty of first degree kidnapping if he (1) intentionally abducts another person; (2) with intent to "facilitate commission of any felony or flight thereafter" or to "inflict bodily injury on him or her." Abduct is defined as "to restrain a person by either (a) secreting or holding him or her in a place where he or she is not likely to be found, or (b) using or threatening to use deadly force." RCW 9A.40.010(1).

Here, the affidavit for probable cause shows that the prosecutor had a sufficient basis to charge Bostick with first degree kidnapping. The affidavit contained information that Bostick and Hem went to the victim's home with the intent of robbing him. The affidavit also contained a statement from the victim that Bostick and Hem entered his home, dragged him to his bedroom and tied him up at his feet and ankles, struck him in the face several times, pointed a pistol at him demanding the combination to his safe, and took a television and checkbooks from his home. Bostick intended to rob the victim as evidenced by his demands for the combination to the safe and taking the victim's television and checkbooks, and in doing so, Bostick intentionally restrained the victim by tying his feet and ankles and pointing a pistol at him. As a result, the prosecutor had a sufficient basis to charge Bostick with first degree kidnapping and did not abuse his discretion. Therefore, Bostick's claim fails.

3.      Ineffective Assistance of Counsel

Bostick argues that his defense counsel provided ineffective assistance because he failed to inform Bostick about his limited right to appeal, failed to challenge the State's findings for the first degree kidnapping charge, and failed to inform Bostick that he was subject to consecutive sentencing. We disagree.

To establish ineffective assistance of counsel, Bostick must show both deficient performance and resulting prejudice. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If he fails to establish either prong of the test, we need not inquire further. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726, *review denied,* 162 Wn.2d 1007 (2007). Deficient performance occurs when counsel's performance falls below an objective standard of reasonableness. *State v. Stenson*, 132 Wn.2d 668, 705, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998). There is a strong presumption of effective assistance, and Bostick bears the burden of rebutting that presumption. *McFarland*, 127 Wn.2d at 335-36. Resulting prejudice must also occur and Bostick must demonstrate that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 335. We review claims of ineffective assistance de novo. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 347, 325 P.3d 142 (2014).

a.      Limited right to appeal

Bostick argues that defense counsel provided ineffective assistance because he failed to advise him of his limited right to appeal. However, as discussed above, Bostick retained the rights that he claims he was not advised about. And Bostick has filed a SAG based on his retention of

those rights. Bostick has not shown counsel's performance was deficient. Therefore, this claim fails.

### b. Challenge to findings for first degree kidnapping

Bostick argues that defense counsel provided ineffective assistance because he failed to challenge the prosecutor's "findings for establishing whether in fact the kidnapping charges were fundamentally over[broad]." SAG at 6. However, the trial court determines whether "there is probable cause to believe that the defendant committed the offense charged" before a warrant of arrest is issued. CrR 2.2(a)(2). And such a determination may be based on an affidavit of probable cause. CrR 2.2(a)(2). Here, the trial court presumably found probable cause because the kidnapping charge was filed. Regardless, as discussed above, sufficient information existed for the kidnapping charge. Therefore, Bostick's claim is meritless.

### c. Consecutive sentencing

Bostick argues that defense counsel provided ineffective assistance because he failed to advise him that he was subject to consecutive sentencing. However, defense counsel stated that he went over the plea documents with Bostick, and Bostick acknowledged that he went over them with his attorney, read them, and understood them. Furthermore, Bostick initialed next to the paragraphs in the plea statement that stated the prosecutor would recommend 180 months of confinement and that his sentences for kidnapping and assault would run consecutively as serious violent offenses. Therefore, Bostick's claim fails.

### 4. Collusion by State and Defense Counsel

Bostick argues that the State and defense counsel colluded against him. However, this claim involves facts or evidence not in the record and such claims are properly raised through a

11

personal restraint petition, not a SAG. *State v. Alvarado*, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). Therefore, we do not address this claim.

    5.      Merger Doctrine

Bostick argues that the merger doctrine rendered the charging information deficient. SAG at 7-8. However, the "[merger] doctrine arises only when a defendant has been found guilty of multiple charges, and the court then asks if the Legislature intended only one punishment for the multiple convictions." *State v. Sweet*, 138 Wn.2d 466, 478, 980 P.2d 1223 (1999) (emphasis omitted) (internal quotation marks omitted). The merger doctrine does not apply to charging informations. Therefore, Bostick's claim is without merit.

    6.      Right to Have Evidence Presented Against Him

Bostick argues that his right to have evidence presented against him was violated. We typically review constitutional violations de novo. *State v. Alexander*, 184 Wn. App. 892, 896, 340 P.3d 247 (2014), *review denied,* 182 Wn.2d 1024 (2015). However, a guilty plea "waives or renders irrelevant all constitutional violations that occurred before the guilty plea, except those related to the circumstances of the plea or to the government's legal power to prosecute regardless of factual guilt." *In re Pers. Restraint of Reise*, 146 Wn. App. 772, 782, 192 P.3d 949 (2008). Because Bostick guilty plea was knowing, voluntary, and intelligent,[8] he waived his right to have evidence presented against him. Therefore, Bostick's claim is meritless.

---

[8] At the plea hearing, Bostick affirmed that he understood there would be "no trial, no witnesses . . . and the only thing left [would] be sentencing." VRP (June 9, 2016) at 5-6.

No. 49427-2-II

We affirm the convictions, reverse the sentencing court's imposition of discretionary LFOs, and remand for the sentencing court to conduct the proper inquiry pursuant to *Blazina* before determining the imposition of discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Lee, J.

We concur:

Maxa, A.C.J.

Sutton, J.

13