# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 49773-5-II |
| Respondent, | |
| v. | |
| TINA MARIE HUGHES, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Tina Marie Hughes appeals her jury trial conviction for unlawful possession of a controlled substance (methamphetamine). She argues that she received ineffective assistance of counsel because her trial counsel failed to object to improper propensity evidence and improper opinion testimony. She also argues that the trial court erred by imposing mandatory legal financial obligations (LFOs) without inquiring into her present and future ability to pay and erred by ordering forfeiture of certain property. We affirm the conviction and the imposition of the mandatory LFOs. But we accept the State's concession that the forfeiture was improper and remand for the trial court to strike the forfeiture provision from the judgment and sentence.

## FACTS

### I. BACKGROUND

On May 27, 2016, Kitsap County Sheriff's Office Deputy John Bass was on patrol when he noticed a truck that had been reported stolen. Deputy Bass stopped the truck to investigate. When backup arrived, Deputy Bass ordered Hughes, who was the driver, and the male passenger out of the truck. Hughes and the passenger complied. Deputy Bass later released the passenger.

After Deputy Bass placed Hughes in his patrol car, Hughes gave him permission to take her license out of the wallet in her purse. Deputy Bass located the purse in front of the truck's driver's seat. There were no other purses in the truck.

After verifying Hughes's identity with her license, Deputy Bass asked Hughes whether she wanted to take the purse with her to jail or to give it to the passenger. Hughes asked to take the purse with them.

Deputy Bass secured the purse in the patrol car's trunk and took Hughes to jail. While he was transporting Hughes, Deputy Bass asked her if there was anything she should not have. Hughes responded that there was not and that she was not a drug user. During the booking procedure, a jail corrections officer found methamphetamine inside a "makeup container" that was in the purse. RP (Nov. 14-17, 2016) at 95.

II. PROCEDURE

The State charged Hughes with unlawful possession of a controlled substance (methamphetamine). Hughes pleaded not guilty.

A. MOTION IN LIMINE

Before trial, the State argued in limine to be allowed to ask Deputy Bass about why he stopped Hughes. The State argued that this evidence should be allowed under the res gestae rule and that the evidence was necessary to explain that Deputy Bass "wasn't just pulling [Hughes] over just to pull her over" or that the deputy was not "just harassing someone for no reason." RP (Nov. 14-17, 2016) at 15. Defense counsel responded, "I would probably agree with that in that— I would agree with that, because that is an important part of my witness'[s] and also my client's

case as to why they were originally—why she was originally pulled over." RP (Nov. 14-17, 2016) at 15.

The trial court ruled that the State could explain that Deputy Bass had stopped Hughes because the truck was listed as a stolen vehicle. But it further ruled that the State could not discuss any additional facts such as the deputy's inability to reach the owner or the fact that any charges were threatened.

B. OPENING STATEMENTS

In its opening statement, the State indicated that Deputy Bass stopped the truck because he had run the license plate and the vehicle had been reported as stolen and that he had arrested and taken Hughes to jail based on this same information. Defense counsel did not object to this statement. In her opening statement, defense counsel did not mention that the vehicle had been reported stolen.

Before calling the witnesses, the State again asked the trial court about what could be said about the vehicle being stolen. The trial court reiterated that the State "could say [the vehicle] was listed as stolen." RP (Nov. 14-17, 2016) at 56. Defense counsel did not object.

C. TESTIMONY

Deputy Bass, the corrections officer who found the drugs in the purse, and the forensic scientist who tested the drugs testified for the State. The witnesses testified as described above.

Deputy Bass testified that (1) the plates on the truck Hughes was driving belonged to a vehicle that had been reported stolen, and (2) when an officer makes a stop of a vehicle reported as stolen, the stop is considered "high risk" and the officer needs to approach the vehicle with caution. RP (Nov. 14-17, 2016) at 62, 67. But Deputy Bass also testified that he had no issues

stopping the truck because the way Hughes had stopped the vehicle did not cause him any concern and that the only reason he treated the stop as high-risk was because the truck had been reported as stolen. Defense counsel did not object to any of this testimony.

Deputy Bass also testified that he did not fingerprint the container with the drugs. When the State asked him why he did not fingerprint this item, the deputy responded,

> Typically, when you find something in someone's wallet or purse, that's their property. I'm not going to fingerprint the gun I find on your hip. That's just not common practice.
>
> Typically, if we have a burglary occur and you don't have a suspect, we're not going to fingerprint, because we don't have anything to—we don't have anything to tie it to. But in this case, no.

RP (Nov. 14-17, 2016) at 73. Defense counsel did not object.

On cross-examination, defense counsel questioned Deputy Bass about when and how he initially accessed the purse. During this questioning, Deputy Bass stated, "Well, at that point [Hughes is] under arrest for the possession of the stolen vehicle." RP (Nov. 14-17, 2016) at 77. Defense counsel did not object to this testimony.

Hughes was the only defense witness. Hughes denied owning the methamphetamine or the container that contained the drugs. She testified that on the day of the arrest, her purse was in the truck unattended for about five hours while people were working on the truck. She also testified that someone had sold her the truck that night and that she was unaware the truck had been reported as stolen. When she found out the truck had been reported as stolen, she thought that "the guy who was selling it to us stole it" or that he was selling her a stolen truck. RP (Nov. 14-17, 2016) at 132. She also testified that she had been driving the truck that night because her friend did not have a driver's license.

4

D. CLOSING ARGUMENTS, JURY INSTRUCTIONS, AND VERDICT

In its closing argument, the State argued that Hughes possessed the methamphetamine because it was in her purse. The State asserted that Hughes's claim that someone put the drugs in her purse when the purse was unattended did not make sense because she was not likely to have left her purse unattended for hours.

In her closing argument, Hughes argued unwitting possession. She noted that the fact she chose to take the purse with her to jail when she had the chance to leave it behind was inconsistent with her knowing that there were drugs in her purse. She also reminded the jury that she had told the deputy that she did not use drugs.

The trial court instructed the jury on the defense of unwitting possession. The jury found Hughes guilty of unlawful possession of a controlled substance (methamphetamine).

E. SENTENCING

At sentencing, the trial court imposed the following mandatory LFOs: (1) $500 victim assessment; (2) $200 filing fee, and (3) $100 DNA/Biological sample fee. The trial court specifically declined to impose any discretionary LFOs.

In addition, on the judgment and sentence, the trial court marked the box stating: "**FORFEITURE**—Forfeit all seized property referenced in the discovery to the originating law enforcement agency unless otherwise stated."[1] Clerk's Papers at 70.

Hughes appeals her conviction, the mandatory LFOs, and the forfeiture provision.

---

[1] There was no statement regarding what this property was or citation to any statute or case law.

ANALYSIS

I. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Hughes first argues that she received ineffective assistance of counsel because defense counsel failed to object (1) to Deputy Bass's testimony about the truck having been reported as stolen, which she characterizes as improper propensity evidence, and (2) to Deputy Bass's testimony about the purse belonging to Hughes, which she characterizes as improper opinion testimony. We disagree.

A. STANDARD OF REVIEW

To establish ineffective assistance of counsel, Hughes must show that (1) defense counsel's performance was deficient and (2) this deficient performance resulted in prejudice. *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Performance is deficient if it falls "'below an objective standard of reasonableness.'" *Grier*, 171 Wn.2d at 33 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Hughes bears the burden of establishing deficient performance and must overcome "'a strong presumption that counsel's performance was reasonable.'" *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)). Legitimate trial tactics and strategies generally do not constitute deficient performance. *Grier*, 171 Wn.2d at 33. A failure to demonstrate either deficient performance or prejudice defeats an ineffective assistance of counsel claim. *State v. Emery*, 161 Wn. App. 172, 188, 253 P.3d 413 (2011), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012).

B. PROPENSITY EVIDENCE

Hughes argues that defense counsel's performance was deficient because she failed to object to the State's introduction of evidence that Hughes was driving a suspected stolen vehicle.

Hughes further argues that this error was compounded by Deputy Bass's testimony emphasizing the high risk nature of the stop. Hughes contends that this evidence was inadmissible propensity evidence.[2]

The record shows that the trial court admitted the testimony about why Deputy Bass stopped Hughes to explain why Hughes was arrested. And defense counsel agreed with this approach, stating that it was necessary to explain why Hughes was originally pulled over. Hughes does not show that this was not a reasonable tactical decision. Without an explanation for the stop and arrest, the jury could have wondered why Hughes was arrested. Explaining that the stop and arrest was based on information that the truck she was driving had been stolen eliminated the possibility that the jury might assume Hughes was arrested for a drug-related offense. Because there was a legitimate tactical reason to allow this evidence, Hughes fails to establish ineffective assistance of counsel on this ground.

C. OPINION ON GUILT TESTIMONY

Hughes further argues that defense counsel's performance was deficient because she failed to object to Deputy Bass's testimony about why he did not fingerprint the packet containing the drugs. She contends that Deputy Bass's testimony was "improper opinion that it was, in fact, her *purse*" and that this testimony was highly prejudicial. Br. of Appellant at 11 (emphasis added).

---

[2] "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." ER 404(b).

In general, no witness, lay or expert, may "testify to his opinion as to the guilt of a defendant, whether by direct statement or inference." *State v. Black*, 109 Wn.2d 336, 348, 745 P.2d 12 (1987). Such testimony is characterized as unfairly prejudicial because it "invad[es] the exclusive province of the finder of fact." *Black*, 109 Wn.2d at 348.

As noted above, in response to the State questioning him about why he did not fingerprint the drug evidence, Deputy Bass explained, "Typically, when you find something in someone's wallet or purse, that's their property. I'm not going to fingerprint the gun I find on your hip. That's just not common practice." RP (Nov. 14-17, 2016) at 73. Hughes contends that this testimony amounted to opinion testimony that the *purse* the deputy found in the truck was hers (Hughes's).

This argument is difficult to understand because Deputy Bass's testimony appears to refer to the packet of drugs, not to the purse. But to the extent that we can construe the challenged testimony as suggesting that Deputy Bass believed the *purse* belonged to Hughes, the testimony was clearly not prejudicial in light of the other evidence. Hughes herself testified that the purse was hers. She asserted only that the purse had been unattended for several hours. Because any potential testimony suggesting that Deputy Bass believed the purse belonged to Hughes was not prejudicial, Hughes fails to show ineffective assistance of counsel on this ground.

## II. MANDATORY LFO'S

Hughes next argues that the trial court erred when it imposed mandatory LFOs without following the requirements of RCW 10.01.160 and *State v. Blazina*, 182 Wn.2d 827, 344 P.3d 680 (2015). We disagree.

The statutory requirement that the trial court consider the defendant's ability to pay applies only to discretionary LFOs. *State v. Clark*, 195 Wn. App. 868, 871-72, 381 P.3d 198 (2016), *review granted in part on other grounds*, 187 Wn.2d 1009 (2017); *State v. Mathers*, 193 Wn. App. 913, 918-19, 376 P.3d 1163, *review denied*, 186 Wn.2d 1015 (2016). Hughes argues that the trial court is required to make findings of fact regarding a defendant's ability to pay before imposing mandatory LFOs citing *State v. Duncan*, 185 Wn.2d 430, 374 P.3d 83 (2016).

But *Duncan* does not require that the trial court enter formal findings, although it acknowledges that findings of fact are a good practice and are helpful on review. 185 Wn.2d at 436-37. *Duncan* does not help Hughes because (1) findings are not required, and (2) Hughes is not asserting a constitutional claim that she is being sanctioned for nonwillful failure to pay, but, rather, is asserting a statutory claim that the trial court violated RCW 10.01.160(3) in imposing the mandatory LFOs. Accordingly, this argument fails.

### III. FORFEITURE

Finally, Hughes argues that the trial court erred in ordering the forfeiture without statutory authority.[3] The State concedes that this was error.

Because the trial court failed to refer to any statutory authority authorizing the forfeiture and the State does not assert there was a statutory basis, we accept the State's concession. *See State v. Roberts*, 185 Wn. App. 94, 96, 339 P.3d 995 (2014) (reversing forfeiture provision in the defendant's judgment and sentence because the State failed to provide statutory authority for the

---

[3] Hughes also argues that defense counsel provided ineffective assistance of counsel by failing to challenge the forfeiture. Because we accept the State's concession on this issue, we do not address it in the ineffective assistance of counsel context.

9

forfeiture and the sentencing court lacked statutory authority to order the forfeiture).

Accordingly, we affirm the conviction and the imposition of the mandatory LFO, but we remand for the trial court to strike the forfeiture clause from the judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

WORSWICK, P.J.

BJORGEN, J.